Waverlee Homes, Inc., the defendant in an action pending in the Choctaw County Circuit Court, challenges a judgment entered upon an arbitration award, on the ground that the arbitrator was biased.
Chris McMichael and Brenda McMichael, purchasers of a mobile home and residents of Alabama, sued Causey Graves d/b/a Holly Brook Homes, L.L.C. (hereinafter "Holly Brook"), a Mississippi entity and the seller of the home, as well as Waverlee Homes, Inc. (hereinafter "Waverlee"), an Alabama corporation and the manufacturer of the home, in the Choctaw County Circuit Court on December 29, 1999. As finally amended, the McMichaels' complaint sought compensatory and punitive damages on claims alleging fraud, breach of express and implied warranties, and negligent and/or wanton construction, inspection, transport, and setup of the home.
Pursuant to an arbitration provision contained in a "Manufactured Home Retail Installment Contract and Security Agreement" ("the retail installment contract") *Page 495 
executed by the McMichaels and Holly Brook during the purchase of the mobile home, Waverlee and Holly Brook filed motions to compel arbitration. On June 1, 2000, the trial court granted those motions and stayed the proceeding until the final disposition of the arbitration. The case was arbitrated on September 26, 2000. On August 28, 2001, Spencer Walker, the arbitrator, an attorney from Grove Hill, issued an order requesting all parties to divide the $2,756.25 arbitration costs equally; we infer from the record that all parties contributed their respective portions of the fee. On September 19, 2001, Holly Brook settled pro tanto with the McMichaels for $5,000. On Friday, September 21, 2001, Walker filed his "Report and Award of Arbitrator" with the clerk of the Choctaw Circuit Court, finding in favor of the McMichaels and awarding them damages in the amount of $490,000. Inconsistent with its order of August 28, 2001, the arbitrator's award also assessed Waverlee $3,000, which represented the entire cost of the arbitration. The trial court entered a judgment on the arbitrator's award on Monday, September 24, 2001.
On October 1, 2001, Waverlee filed a notice in the trial court to depose Robert C. Black, Jr., a Montgomery attorney, concerning a "deal" allegedly proposed by the McMichaels' attorney, Jeff Utsey, in an arbitration proceeding in another similar case. The McMichaels filed a "Motion for Protective Order and/or in the Alternative, Motion to Quash," which the trial judge granted. Waverlee then filed a postjudgment "Motion to Vacate Judgment and Arbitration Award and/or Petition to Vacate, Modify and Correct Arbitration Award and Judgment and for Other Relief," pursuant to Rule 59(e), Ala.R.Civ.P., seeking to vacate the judgment entered on the arbitration award. In support of the motion, Waverlee referenced the proposed deposition of Black, made an offer of proof regarding the alleged deal Utsey proposed to Black, and submitted the affidavit of Joel Williams, its attorney. In the motion, Waverlee requested that the court, among other things, "vacate the arbitration award and the judgment of this Court entering the arbitration award rendered against Waverlee and in favor of the plaintiffs. . . ."
On December 26, 2001, Waverlee again noticed the deposition of Robert Black, Jr. Thereafter, the McMichaels filed a response opposing Waverlee's postjudgment motion and moved to strike the evidence submitted by Waverlee in its motion, asserting that it was inadmissible hearsay. The McMichaels also filed a motion to quash the second deposition subpoena of Robert Black, Jr., which the trial court granted. The trial court never ruled on Waverlee's postjudgment motion to vacate the judgment entered on the arbitration award, and on January 9, 2002, that motion was denied by operation of law pursuant to Rule 59.1, Ala.R.Civ.P. On January 17, 2002, the trial court entered an "Order of Partial Dismissal"; that order dismissed Holly Brook from the action as a result of the pro tanto settlement. Waverlee appealed to this Court on February 11, 2002, challenging the trial court's adoption of the arbitration award. Holly Brook is not a party to this appeal.
Waverlee argues on appeal that the denial of its motion to vacate the judgment entered on the arbitrator's award must be reversed because, it says, (1) the $490,000 arbitration award was a result of partiality, bias, and corruption on the part of the arbitrator, and (2) the arbitrator acted arbitrarily and capriciously and in a manifest disregard of the law by issuing such an award. The dispositive issue for the purposes of this appeal is whether, in light of the evidentiary showing by Waverlee, the trial court erred in denying, without a *Page 496 
hearing, Waverlee's postjudgment motion to vacate the judgment confirming the award of the arbitrator.
 Facts
The record contains the affidavit of Joel Williams attesting that after the trial court granted the motions to compel arbitration filed by Waverlee and Holly Brook, Williams sent a letter to Utsey naming six attorneys who he proposed could serve as arbitrators in the matter. Utsey's letter in reply stated that he opposed all of the proposed arbitrators suggested by Williams and that any proposals for arbitrators should be made by David Jordan, the attorney for Holly Brook, as required by the retail installment contract entered into by the McMichaels and Holly Brook. The retail installment contract stated, in pertinent part:
 "14. ARBITRATION: ALL DISPUTES, CLAIMS, OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU WITH MY CONSENT."
(Capitalization original.) The section of the retail installment contract entitled "Definitions" states, in pertinent part:
 "`I', `me', `my', means the Buyers. `You', `your' means the Seller and also the Assignee or their affiliates (after the Contract is assigned by the Seller)."
Williams attested that he subsequently had a telephone conversation with Jordan in which Jordan represented that he believed Utsey would agree to have Spencer Walker serve as arbitrator in the matter. Jordan stated that to his knowledge Walker had no relationship with Utsey and had no previous adversarial relationship with the mobile-home industry. On June 12, 2000, Williams received a letter from Jordan proposing Walker as arbitrator, stating Jordan's belief that Walker "would be fair to all parties," and stating that Utsey had agreed to accept Walker as arbitrator. Walker was selected to arbitrate the matter, but, according to Williams's affidavit, he refused to allow Waverlee to depose the McMichaels or their experts during the arbitration proceeding.
Williams stated that on September 26, 2001, five days after Walker filed the arbitration award in favor of the McMichaels, Williams learned of certain circumstances relating to Walker and Utsey, including a letter authored by Utsey and sent to the Alabama State Bar on February 11, 1999, relating to another arbitration proceeding. Utsey's letter to the Bar stated:
 "I represent a purchaser against a manufacturer and seller of a mobile home. This case has been ordered to arbitration. The terms of the arbitration are that I pick one arbitrator, the seller picks one arbitrator and the two arbitrators together pick one arbitrator.
 "Can I make an agreement with the seller that I will argue him out of this case or in the event a verdict is returned against them, either through a jury trial or an arbitration, I will never try and collect the judgment from his client? In return for this, I would be given the right to select his arbitrator.
 "Before I do anything, I would like to know if this is unethical behavior. If this agreement is deemed ethical, do I have to inform the other parties to this case of the agreement? I thank you in advance and with warmest personal regards. I await your reply."
The Bar's letter in response, dated February 18, 1999, authored by an assistant general counsel for the Bar, stated:
 "I am writing in response to your letter of February 11, 1999, requesting *Page 497 
an ethics opinion from this office. A copy of your letter is attached hereto for reference purposes. In response to your request, I am providing you the following which is an informal opinion of the Office of General Counsel and is not binding on the Disciplinary Commission of the Alabama State Bar.
 "Since the scheme for selecting arbitrators is specified in an arbitration agreement and not fashioned by a particular order, there is nothing unethical in proceeding in the manner you have described in your letter.
 "I trust the above is sufficient to answer your inquiry. If you have any further questions, please feel free to contact this office."
Williams attested that, upon learning of this exchange of letters, he formed the belief that Utsey, rather than Holly Brook, had actually selected Walker as the arbitrator.
Williams further attested that he also learned of court records in Choctaw and Clarke Counties showing that Walker had served as plaintiffs' counsel in actions against Southern Energy Homes ("Southern Energy"), a mobile-home manufacturer, before Walker served as the arbitrator in this case. The records showed that in 1997, Walker had served as plaintiffs' counsel in Rodney Todd v. Southern Energy Homes (case no. CV-97-022) in the Circuit Court of Choctaw County and that Walker and Utsey were cocounsel in that case, and that in 1998, Walker had served as plaintiffs' counsel in Francis Curly v. Southern Energy Homes, Inc. (case no. CV-98-063) in the Circuit Court of Clarke County.
Williams stated that he also learned that in 1999 Walker was appointed as arbitrator in Doug N. Parmer v. Sanderson Mobile Homes (case no. CV-99-08-M) in the Circuit Court of Washington County even though Walker had served as plaintiffs' counsel in earlier actions against Southern Energy. Williams represented that in the Parmer case counsel for the defendant had filed a motion objecting to Walker's selection as arbitrator and his acceptance of that position.[1] Williams stated that in 2000, in the case of Vera Smith v. Cedar Ridge Homes, Inc. (case no. CV-2000-114-C) in the Circuit Court of Choctaw County, counsel for the defendant mobile-home manufacturer, during the process of selecting an arbitrator, had asked Walker if he had ever served as a plaintiff's attorney in any mobile-home cases, and Walker had responded that he had not. Williams also stated that later in the Smith case at a hearing held July 24, 2001, Walker was asked by the defendant mobile-home manufacturers' counsel if he had arbitrated any mobile-home cases, and Walker responded that he had served as arbitrator in one case and had been on the panel of another case in which a decision had not been rendered. Walker arbitrated the Smith case.
The record as compiled by Waverlee purports to reveal that in 2000 Walker served as arbitrator in two other actions asserting claims factually similar to those in the present case and involving mobile homes; Utsey was counsel for the plaintiffs in those cases. The cases were in Wilcox County, Clowers v. Grand Manor, Inc. (case no. CV-00-76), and in Choctaw County, McGrew v. Harold Allen's Mobile Home FactoryOutlet (case no. CV-2000-141-M). In each of those cases, and in the *Page 498 Smith case and in the case at hand, Walker as arbitrator found in favor of the plaintiff against the defendant mobile-home manufacturer, even though the dealer was also a defendant.[2] Likewise, in those three cases and in the present case the arbitrator made similar findings of fact as to the nature and extent of the plaintiffs' damage. For example, Walker, as arbitrator, found that the plaintiffs in each case suffered from emotional distress as a result of embarrassment and humiliation they experienced when guests would visit their homes. Walker also found that each home had no market value and that the plaintiffs in each case had suffered mental anguish as a result of their fear that their homes would catch on fire because of the "great" amount of the moisture in the homes.[3] Walker also awarded substantial damages to the plaintiffs in each of the cases. As noted, the award in this case was $490,000. InClowers, the plaintiff was awarded $590,000; in McGrew, the plaintiff was awarded $550,000; and in Smith, the plaintiff was awarded $360,000.[4]
The record further shows that in each of those cases, as in this case, the mobile-home manufacturer was taxed with a $3,000 arbitrator's fee as the entire cost of the arbitration. The record also shows that the awards in McGrew, Smith, and the instant case were all issued on September 21, 2001, and the award in Clowers was issued on September 24, 2001.
Williams asserted further in his affidavit that he discovered, after the arbitration award was entered in this case, that Utsey had attempted to reach an agreement identical to the one described in the above-quoted letter to the Alabama State Bar, with attorney Robert Black, Jr., defense counsel for a mobile-home dealer in another action in which Utsey was counsel for the plaintiffs.[5] Those events were described in "Defendant's Motion to Reconsider Order Quashing Subpoena and Offer of Proof." That offer of proof was made in support of Waverlee's motion that the trial court reconsider its order quashing a deposition notice for the testimony of Robert Black, Jr., filed October 1, 2001, and in support of Waverlee's motion to vacate the judgment or the arbitration award. In pertinent part, the offer of proof stated:
 "Robert Black is an attorney in the Montgomery law firm of Hill, Hill, Carter, Franco, Cole Black, PC. He represented a mobile home dealer in a case in which Jeff Utsey represented the Plaintiff in Choctaw County Circuit Court. The manufacturer was also a Defendant in that case. The Defendants filed Motions to Compel Arbitration. The Court granted the Motions.
 "Mr. Utsey asked Mr. Black to come over to his office after the motions were heard to discuss the case and Mr. Black did so. At that meeting, Mr. Utsey attempted to get Mr. Black to enter into *Page 499 
an agreement whereby the seller/dealer would allow Jeff Utsey to select the arbitrator of his choice (not the dealer's choice) in exchange for the Plaintiff agreeing not to collect any possible award or judgment against that seller/dealer and to direct the case against only the manufacturer. Mr. Utsey gave to Mr. Black copies of the attached letters dated February 11, 1999, and February [18], 1999, between Mr. Utsey and the Alabama State Bar. Mr. Utsey stated that his selection would be Spencer Walker.
 "Mr. Black rejected the proposal. In a subsequent Fleetwood Homes[6] case, Mr. Utsey proposed agreement to Spencer Walker as the arbitrator. Mr. Black wrote a letter to Mr. Utsey rejecting Mr. Walker and reminding Mr. Utsey of the deal he had previously offered Mr. Black as outlined above. Mr. Utsey then sent a letter to Mr. Black denying the conversation and denying even knowing or talking to Robert Black."
Williams also attested that at the arbitration hearing both sides presented reports from experts who had inspected the McMichaels' home. Those reports are also included in the record. Each of Waverlee's experts found only minor defects, if any, within the home. For instance, the record contains an inspection report of the McMichaels' home issued by one of Waverlee's experts, Joe Teague, a housing inspector for Factory Built Housing Inspection Service. In his report, Teague stated:
 "After reviewing all service work orders, Mr. Chesser's report and my on-site inspection, I find it hard to understand Mrs. McMichael's letter dated August 23, 1999. All the problems she addressed of this house had been corrected.
 "My assessment of this house is, if Mr. and Mrs. McMichael will perform the normal maintenance and upkeep on their house as directed by the homeowner's manual, then it will remain safe for many years to come."
The largest estimate of damage expressed by any of the experts in this case was that stated in a report issued by inspector Larry Reynolds, anexpert for the McMichaels, who estimated the total cost of repairs to the mobile home, including labor and materials, to be between $4,500 and $5,500. However, Walker awarded the McMichaels $490,000 for emotional and financial damage based on their breach-of-warranty claims. The award does not purport to include punitive damages.
 Discussion
At the outset, we note that the trial court's judgment of September 24, 2001, entered on the arbitration award, was pursuant to that phrase in the arbitration clause contained in the retail installment contract entered into by the McMichaels and Holly Brook stating "[j]udgment upon the award rendered may be entered in any court having jurisdiction." Waverlee moved, in the first instance, to vacate that judgment. Therefore, we consider whether the trial court erred by not setting aside its final judgment confirming Walker's award, upon Waverlee's postjudgment submission of evidence designed to support an inference that Walker's award was the result of Walker's bias in favor of the McMichaels. This Court has not previously had to address such a challenge to a judgment entered upon an arbitration award. Accordingly, we look to the decisions of other jurisdictions that have considered analogous situations for insight to assist our analysis. *Page 500 
In World Invest Corp. v. Breen, 684 So.2d 221 (Fla.Dist.Ct.App. 1996), the plaintiff investor filed a petition in the circuit court to vacate an arbitration award in favor of the defendant investment corporation on the bases that the arbitrator was biased and that the award was arbitrary and capricious. The trial court dismissed the petition, and the plaintiff appealed. Citing O.R. Sec. v. Professional Planning Assocs., Inc.,857 F.2d 742 (11th Cir. 1988), the Breen court stated, "When a petition to vacate an arbitration award alleges facially sufficient grounds for relief, the trial court must, at least, hold a limited evidentiary hearing to allow the movant to submit evidence to establish its claim." 684 So.2d at 222. Thus, the Breen court held that the trial court erred in summarily dismissing the plaintiff's motion to vacate the arbitration award.
In Medina v. Foundation Reserve Ins. Co., 123 N.M. 380, 940 P.2d 1175
(1997), an insurer filed a motion to vacate an arbitration award of uninsured motorist benefits in favor of an insured, alleging that the insured procured the award through fraud, corruption, and undue means. The trial court denied the motion. Concluding that substantial evidence had been proffered to support the assertion that the arbitration award was procured as a result of fraud, corruption, and undue means, the Supreme Court of New Mexico stated, "In evaluating the propriety of an arbitration award, the reviewing court will conduct an evidentiary hearing and enter findings of fact and conclusions of law upon any issue presented in the motion to vacate the award." 123 N.M. at 383,940 P.2d at 1178, citing Melton v. Lyon, 108 N.M. 420, 421, 773 P.2d 732, 733
(1989).
In Melton, property owners appealed the trial court's order confirming an arbitration award in favor of a contractor who had constructed a "warehouse-office complex" for the property owners, which was to be later conveyed by the property owners as part of an acquisition of real estate for the development of a retirement community. The property owners sought to vacate the arbitration award on the ground that the arbitrator was biased as a result of his relationship with a competing developer specializing in the development of retirement communities in New Mexico and because the arbitrator had failed to disclose that relationship. The trial court ruled that the arbitrator's failure to disclose his relationship with a competing developer was at most harmless error.[7]
The Supreme Court of New Mexico agreed with the trial court stating:
 "It is not the function of the [trial] court to hear the case de novo and consider the evidence presented to the arbitrators, but rather to conduct an evidentiary hearing and enter findings of fact and conclusions of law upon each issue raised in the application to vacate or modify the award."
Melton, 108 N.M. at 421, 773 P.2d at 733, citing State ex rel. HootenConstr. Co. v. Borsberry Constr. Co., 108 N.M. 192, 769 P.2d 726 (1989). See also Casias v. Dairyland Ins. Co., 126 N.M. 772, 975 P.2d 385
(Ct.App. 1999).
Also, in In re Arbitration Between Clawson Habilitat, Inc.,71 Haw. 76, 783 P.2d 1230 (1989), a homeowner filed a motion to vacate an arbitration award in favor of a contractor hired by the homeowner to construct a driveway and retaining wall on the homeowner's property, after a dispute between them had been referred to arbitration. *Page 501 
Before the issuance of the arbitrator's award, the parties believed that a settlement was likely and agreed that no arbitration award would be issued until after 3:00 p.m. on October 21, 1988. The arbitrator's award was issued on November 1, 1988. In his motion to vacate the arbitrator's award, submitted before the trial court's confirmation of the award, the homeowner asserted that the parties had reached a settlement agreement before the release of the arbitrator's award.[8] However, the trial court confirmed the award. The homeowner appealed. On appeal, the Supreme Court of Hawaii stated that a question of fact existed as to whether there had been an agreement reached by the parties before 3:00 p.m. October 21, 1988. The court went on to hold that "whenever material facts are in dispute in determining whether an arbitration award should be vacated, the circuit court should conduct an evidentiary hearing and render findings of fact and conclusions of law in support of granting or denying the motion to vacate the arbitration award." Clawson,71 Haw. at 79-80, 783 P.2d at 1232.
In the instant case, Waverlee submitted post-arbitration, postjudgment evidence describing specific circumstances relating to its contention that Walker, the arbitrator, was biased. That evidence, when taken in its entirety, raises a threshold inference of possible bias based on Walker's alleged failure to disclose any interest or bias that might affect his judgment, including any relationships between him and Utsey. The McMichaels did not submit any evidence to contradict Waverlee's assertions of arbitrator bias, and there were therefore no material facts in dispute that would justify a finding by the trial court that Waverlee's contentions were false. Thus, in light of Breen, Medina,Melton, and Clawson, supra, we conclude that Waverlee's evidentiary showing in support of its postjudgment motion was sufficient, at that initial stage, to warrant a hearing for the purpose of determining whether adequate evidence exists to grant Waverlee's request to set aside the judgment of confirmation. Because it is the province of the trial court to assess the admissibility and weight of Waverlee's evidence, and likewise that of any rebuttal evidence from the McMichaels, we do not comment on the merits of Waverlee's allegations; rather, we conclude only that an evidentiary hearing is warranted.
The record does not contain a transcript of the arbitration proceeding. However, the fact that an appeal from an arbitration award is submitted without a record or transcript of an arbitration proceeding does not preclude this Court from reviewing the issue whether a hearing should have been conducted on an otherwise sufficiently supported motion challenging confirmation of the arbitration award. If the arbitrator was biased before the arbitration proceeding was conducted, the content of the proceeding would not be determinative of a challenge to the resulting award based on such bias. The cases of Sanderson Group Inc. v. Smith,809 So.2d 823 (Ala.Civ.App. 2001), and McKee v. Hendrix, 816 So.2d 30
(Ala.Civ.App. 2001), cited by the McMichaels, are not to the contrary. For example, in Sanderson, the company that financed a manufactured home sued the purchaser seeking to repossess the home for failure of the purchaser to make the payments on the home. The purchaser counterclaimed against the financing company and filed a third-party complaint against *Page 502 
the manufactured-home dealer and its salesperson. The dispute was ordered to arbitration. The arbitrator issued an order that, among other things, awarded damages in favor of the purchaser against the dealer for emotional distress caused by the dealer. The dealer moved to vacate the arbitration award on the basis that the arbitrator's award of damages for mental anguish was in manifest disregard of the law. The trial court denied the dealer's motion to vacate and confirmed the arbitrator's award. The dealer appealed. No transcript of the arbitration proceedings was provided for the Court of Civil Appeals to review. Judge Crawley, author of the Court of Civil Appeals' opinion, declared that "[w]ithout a transcript revealing evidence to support [the purchaser's] conversion claim, we cannot conclude that the arbitrator ignored or refused to apply the law." 809 So.2d at 830. Three of the other four judges on that court merely concurred in the result; the fourth concurred in the result as to the portion of the opinion concerning the statement in question.
In McKee, the purchasers of a new home sued the vendor and its agent, pursuant to a limited warranty on their home, as a result of certain repairs required to be performed on the home. The purchasers alleged breach of warranty, negligent repair, and breach of contract. The dispute was ordered to arbitration, and the arbitration proceeding was not transcribed. The arbitrator issued an order in favor of the purchasers. The purchasers moved for an order confirming and adopting the award, which the trial court granted. The defendants appealed. On appeal, the Court of Civil Appeals stated, with regard to the lack of a transcript of the arbitration proceedings, "no transcript of the arbitration hearing has been presented for this court's review. A court reviews the confirmation of an arbitration award as it would any other judgment of a lower court; we cannot say the factual determination on this issue was `clearly erroneous.'" McKee, 816 So.2d at 36, citing Davis v. PrudentialSec., Inc., 59 F.3d 1186 (11th Cir.)
In the instant appeal, unlike the circumstances in Sanderson andMcKee, Waverlee is not seeking our review, in the first instance, of the actual arbitration proceeding. Rather, it is seeking to have the judgment confirming the arbitrator's award vacated as a result of alleged bias on the part of the arbitrator. Of course, should that judgment be vacated, Waverlee contends that the trial court should then enter a new judgment, based on the evidence presented, refusing to confirm the award.
On remand, the trial court must evaluate at that hearing the admissibility of the evidence offered by the parties concerning the validity of the arbitrator's award and consider that evidence accordingly. Although we might simply remand this cause to the trial court on that basis, this case presents the unexplored issue in this State of what is required to show arbitrator bias as a basis for challenging an arbitration award. Accordingly, for guidance for the trial court on remand, we will discuss the legal principles that should govern its consideration of the facts pertaining to Waverlee's assertion that the arbitrator's award was flawed by bias and partiality.
Waverlee asserts that it discovered the evidence of the arbitrator's bias only after the arbitrator's award and the final judgment entered on that award by the trial court. Waverlee asserts that the arbitrator's bias arises out of the relationship between the McMichaels' counsel and the arbitrator and that the arbitrator had engaged in similar conduct in other cases. Waverlee argues that this bias was *Page 503 
manifested by the arbitrator's failure to disclose those circumstances to Waverlee and his refusal to consider expert testimony Waverlee attempted to present. These contentions were presented to the trial court in Waverlee's postjudgment motion to vacate and the evidentiary submissions accompanying that motion.
The trial court granted the motions to compel arbitration pursuant to the arbitration provision set out in the retail installment contract; that provision specifically states that the arbitration would be governed by the Federal Arbitration Act (the "FAA"). Because the parties accepted and proceeded under that grant of the motions, on remand the trial court should consider the law pertaining to claims of arbitrator bias asserted under the FAA. Waverlee submitted to the trial court numerous attachments and exhibits as evidentiary support, which have been carried forward in its submission to this Court in opposition to the McMichaels' motion to dismiss the appeal.[9] Thus, the trial court must also consider the evidence we set out supra, along with any additional evidence elicited in the evidentiary proceedings on the postjudgment motion, when making its determination as to whether Waverlee has presented sufficient evidence of arbitrator bias to warrant vacation of the judgment of confirmation of the arbitrator's award.
The evidence presented by Waverlee in support of its motion was recited previously to show the factual basis Waverlee asserted in support of its arguments to the trial court; we make no determination whether that evidence will be admissible and otherwise proper for the trial court's consideration at the hearing on remand. At this stage it appears on the record uncontradicted, not having been stricken by the trial court or refuted by the McMichaels.
Waverlee argues that the arbitration award issued in this case by Walker is due to be vacated pursuant to 9 U.S.C. § 10(a)(1), (2), (3), or (4), as a result of Walker's bias and partiality as shown by his relationship with Utsey, as well as the alleged "secret deal" that existed between Utsey and Holly Brook. 9 U.S.C. § 10(a) states:
 "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration —
 "(1) Where the award was procured by corruption, fraud, or undue means.
 "(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
 "(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 "(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
An analysis of whether Waverlee is entitled to the vacation of the arbitrator's award on the basis of alleged bias and partiality on Walker's part should begin with a consideration of the seminal United States Supreme Court case of Commonwealth Coatings Corp. v. ContinentalCasualty Co., 393 U.S. 145 *Page 504 
(1968). In that case, Commonwealth Coatings Corporation, a subcontractor, sued sureties on the prime contractor's bond for payment allegedly due for work performed by Commonwealth. The dispute was ordered to arbitration pursuant to a provision contained in an applicable contract. In accordance with the provision, Commonwealth and the sureties each selected an arbitrator, who then jointly selected a supposedly neutral third arbitrator. However, the third arbitrator was a consultant who had regularly done business with the prime contractor. The prime contractor had paid the third arbitrator consulting fees of approximately $12,000 "over a period of four of five years," id. at 146, before the arbitration, but that consulting relationship was not disclosed to Commonwealth until after the arbitration occurred. Commonwealth challenged the award based on the undisclosed relationship.
A plurality of the Court stated:
 "It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all of their income from their work deciding cases, but we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias."
393 U.S. at 148-49 (emphasis added). Although the Court determined that the arbitration award was due to be set aside, the plurality holding did not discuss in detail a particular standard for courts addressing similar issues to follow. Rather, the plurality opined that "[w]e cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." Id. at 150. In a concurring opinion, Justice White stated that the best means of avoiding allegations of arbitrator bias was complete disclosure of the existence of any financial transactions the arbitrator has had or is, at the time of the arbitration, negotiating with a party to the arbitration. It appears that the Court envisioned that an arbitrator's award could be challenged on the basis of bias where the challenging party presented facts that, viewed reasonably, gave rise to an "impression of possible bias."
Subsequent to Commonwealth Coatings, the interpretation of, and elaboration upon, what has often come to be referred to as the "reasonable impression of partiality" standard has varied somewhat among the different federal courts considering it. For example, in MiddlesexMutual Insurance Co. v. Levine, 675 F.2d 1197 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit applied a rationale similar to the rationale in Commonwealth Coatings to a situation in which the arbitrator was aware, yet failed to disclose, that his family-owned insurance company had had significant and repeated business dealings with one of the parties to the arbitration, against whom the arbitrator ultimately found, and that the insurance company was involved in a dispute with that party at the time of the arbitration. Holding that the arbitrator's award was due to be vacated, the court stated that an arbitration award must be vacated where pertinent facts relating to a supposedly neutral arbitrator demonstrate a "reasonable impression of partiality," 675 F.2d at 1201, even though there was no evidence of fraud, corruption, or partiality, *Page 505 
where the possibility of bias was "`direct, definite and capable of demonstration rather than remote, uncertain and speculative.'" Id. at 1202 (quoting Tamari v. Bache Halsey Stuart, Inc., 619 F.2d 1196 (7th Cir. 1980)).
That same court of appeals subsequently declared in LifecareInternational, Inc. v. C.D. Medical, Inc., 68 F.3d 429 (11th Cir. 1995), that the "mere appearance" of partiality would not support vacating an arbitrator's award. In Lifecare, the court considered the "evident partiality" provision in 9 U.S.C. § 10(a)(2). The bias in the case was alleged to have occurred as a result of the failure of one of the arbitrators to disclose two previous contacts[10] by the arbitrator's law firm, for which he was "of counsel," with the party who was awarded the judgment, as well as his failure to disclose a scheduling dispute he had previously experienced with an attorney from the firm representing the losing party, 18 months before the arbitration. The United States Court of Appeals for the Eleventh Circuit stated:
 "In order to vacate on the ground of evident partiality in a nondisclosure case, the party challenging the arbitration award must establish that the undisclosed facts create a `reasonable impression of partiality.' Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1201 (11th Cir. 1982); Schmitz v. Zilveti, 20 F.3d 1043, 1046 (9th Cir. 1994). This Court has reasoned that the alleged partiality must be `direct, definite and capable of demonstration rather than remote, uncertain and speculative.' Levine, 675 F.2d at 1201; accord, Consol. Coal v. Local 1643, United Mine Workers, 48 F.3d 125, 129 (4th Cir. 1995); Health Services Management Corp. v. Hughes, 975 F.2d 1253, 1264 (7th Cir. 1992). Accordingly, the mere appearance of bias or partiality is not enough to set aside an arbitration award. Consol. Coal, 48 F.3d at 129; Health Services Management Corp., 975 F.2d at 1264; Florasynth, Inc. v. Pickholz, 750 F.2d 171, 173
(2nd Cir. 1984); see Schmitz, 20 F.3d at 1046-47 (rejecting `appearance of bias' standard)."
68 F.3d at 433. See also Gianelli Money Purchase Plan Trust v. ADMInvestor Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998) ("[t]he alleged partiality must be `direct, definite and capable of demonstration rather than remote, uncertain and speculative'"); Scott v. PrudentialSec., Inc., 141 F.3d 1007 (11th Cir. 1998) ("to vacate an arbitration award for evident partiality, the moving party must present evidence that would support a `reasonable impression of partiality' on the arbitrator's behalf. . . . The assertion of partiality, however, must be `direct, definite and capable of demonstration rather than remote, uncertain and speculative.'"); Mays v. Lanier Worldwide, Inc., 115 F. Supp.2d 1330,1348-49 (M.D.Ala. 2000) ("In order to vacate on the ground of evident partiality in a nondisclosure case, the party challenging the arbitration award must establish that the undisclosed facts create a `reasonable impression of partiality.' . . . [T]he alleged partiality must be `direct, definite and capable of demonstration rather than remote, uncertain and speculative.'").
In University Commons-Urbana, Ltd. v. Universal Constructors, Inc.,304 F.3d 1331 *Page 506 
(11th Cir. 2002), the most recent decision by the Eleventh Circuit Court of Appeals on this issue, a contractor appealed an arbitration award in favor of the developer in a dispute arising from a construction project. The contractor alleged that one of the arbitrators to the proceeding had failed to disclose the extent of his contact and relationship with counsel for the prevailing party, as well as his contact and relationship with the prevailing party itself and with one of its witnesses.[11] The Eleventh Circuit Court of Appeals concluded that the arbitrator's relationships and contacts resulted in the "appearance" of bias toward the prevailing party, but went on to hold that "`the mere appearance of bias or partiality is not enough to set aside an arbitration award,'Lifecare International, 68 F.3d at 433." University Commons-Urbana, 304 F.3d at 1340. The court held that because of lack of an arbitration transcript and the incompleteness of the record otherwise, it could not say whether vacation of the award was warranted. It did hold, however, that further fact-finding was necessary, by way of an evidentiary hearing before the trial court, so that a determination could be made as to whether the arbitrator had adequately disclosed his interactions with the parties and attorneys involved in the arbitration.
Other courts have addressed similar issues and reached similar conclusions. For example, in Schmitz v. Zilveti, 20 F.3d 1043 (9th Cir. 1994), a post-arbitration investigation initiated by the losing party revealed that the law firm of one of the arbitrators had previously represented the parent company of the prevailing party in at least 19 cases over a 35-year period, the most recent of which occurred approximately 21 months before the arbitration. The losing party sought to have the arbitration vacated pursuant to 9 U.S.C. § 10(a)(2), arguing the arbitrator was "evidently partial." The record revealed that the arbitrator had run a "conflict check" for the subsidiary company only, rather than for it and the parent company, even though he had reviewed documents that indicated that the entity participating in the arbitration was a subsidiary of the parent company. The arbitrator did not disclose before the hearing any of his firm's earlier representations of the parent company. The United States Court of Appeals for the Ninth Circuit held that the arbitrator was "evidently partial" as a result of his failure to reveal the earlier representations, and, thus, that the arbitration award was due to be vacated. In reaching its conclusion, the court, examining the holding in Commonwealth Coatings, stated that "`evident partiality' is present when undisclosed facts show a `reasonable impression of partiality.'" 20 F.3d at 1046.
In Consolidation Coal Co. v. Local 1643, United Mine Workers ofAmerica, 48 F.3d 125 (4th Cir. 1995), the United States Court of Appeals for the Fourth Circuit applied the "evident partiality" standard of9 U.S.C. § 10 to a dispute arising from a collective bargaining agreement. In Consolidation Coal, the employer coal company filed an action challenging an arbitrator's award in favor of the employee union, the United Mine Workers of America. The employer argued that the arbitrator failed to disclose that his brother was employed by the International United Mine Workers of America, and that that relationship had resulted in an award infected with partiality. Holding that no such *Page 507 
partiality existed, the Fourth Circuit Court of Appeals stated:
 "To demonstrate evident partiality under the FAA, the party seeking vacation has the burden of proving `that "a reasonable person would have to conclude that an arbitrator was partial" to the other party to the arbitration.' Peoples [Sec. Life Ins. Co. v. Monumental Life Ins. Co.], 991 F.2d [141] at 146 [(4th Cir. 1993)] (quoting Apperson [v. Fleet Carrier Corp.], 879 F.2d [1344] at 1358 [(6th Cir. 1989)]). This reasonable person standard requires a showing of something more that the `appearance of bias,' but not the `insurmountable' standard of `proof of actual bias.' Morelite [Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds], 748 F.2d [79] at 84 [(2d Cir. 1980)]. This Court has reasoned that '[t]he alleged partiality must be "direct, definite, and capable of demonstration rather than remote, uncertain or speculative."' Peoples, 991 F.2d at 146 (quoting Health Servs. Management Corp v. Hughes, 975 F.2d 1253
(7th Cir. 1992)). Furthermore, the party asserting evident partiality `must establish specific facts that indicate improper motives on the part of the arbitrator.' Peoples, 991 F.2d at 146."
Consolidation Coal, 48 F.3d at 129.
In Health Services Management Corp. v. Hughes, 975 F.2d 1253 (7th Cir. 1992), the owner of a long-term health-care facility challenged an arbitration award in favor of the architect hired by the owner to perform architectural services for the health-care facility. Before arbitration of the dispute, the American Arbitration Association failed to notify counsel for the owner that all three arbitrators selected to arbitrate the case knew the architect and that two had had previous business dealings with him. However, when the arbitrators were questioned by the owner's counsel about any potential conflicts of interest with the parties, the previous business relationships were disclosed. The arbitrators stated they did not believe that those relationships would prejudice them, and, relying on those representations, counsel for the owner agreed to proceed with the arbitration. The arbitrators rendered an award in favor of the architect, as to which the owner sought vacation. Denied that relief, he appealed. Holding that the relationships did not warrant a vacation of the award, the United States Court of Appeals for the Seventh Circuit stated that the relationships did not show "evident partiality." "`Evident partiality' within the meaning of subsection (a) of the Federal Arbitration statute means more than the mere appearance of bias. . . . To set aside an award for arbitration partiality, '[t]he interest or bias . . . must be direct, definite and capable of demonstration rather than remote, uncertain or speculative.'" 975 F.2d at 1264 (quoting Tamari v. Bache Halsey Stuart Inc., 619 F.2d at 1200, quoting in turn United States Wrestling Fed'n v. Wrestling Div. of theAAU, Inc., 605 F.2d 313, 318 (7th Cir. 1979)).
In Morelite Construction Corp. v. New York City District CouncilCarpenters Benefit Funds, 748 F.2d 79 (2d Cir. 1984), the United States Court of Appeals for the Second Circuit addressed the issue of what constitutes "evident partiality" under 9 U.S.C. § 10(a)(2). InMorelite, the losing party to an arbitration sought vacation of the arbitration award on the basis of bias because of the father-son relationship between the arbitrator and the vice president of the prevailing party. The court held that "evident partiality" within the meaning of § 10 of the FAA existed where a reasonable person would conclude that the arbitrator was partial to one party in the arbitration proceedings. The court *Page 508 
concluded that a father-son relationship between the arbitrator and the vice president of the prevailing party did demonstrate "evident partiality," and rendered the award subject to vacation.
In Sanko S.S. Co. v. Cook Industries, Inc., 495 F.2d 1260 (2d Cir. 1973), the Second Circuit Court of Appeals again applied the standard, this time with greater emphasis on "appearance." In that case, the owner of a ship filed a motion to vacate an arbitration award in favor of the charterer, alleging arbitrator bias caused by the existence of a business relationship between one of the arbitrators and the charterer. The Second Circuit Court of Appeals stated that "where dealings [between an arbitrator and a party] `might create an impression of possible bias' they must be disclosed." Cook, supra, 495 F.2d at 1263 (footnote omitted). The court stated further:
 "[T]he better practice is that arbitrators should disclose fully all their relationships with the parties, whether these ties be of a direct or indirect nature. Although some unnecessary disclosure may result, if arbitrators err on the side of disclosure, . . . it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating an award."
495 F.2d at 1263-64 (footnotes omitted), citing Commonwealth Coatings v.Continental Cas. Co., 393 U.S. at 152 (White, J., concurring).
We conclude that the weight of authority developed after CommonwealthCoatings requires a review of the offered evidence pursuant to the "reasonable impression of partiality" standard, using the criteria developed in the federal cases reviewed above. The appropriate approach for the trial court to take in assessing Waverlee's allegations that Walker was biased or partial in his arbitration of the underlying dispute is to consider whether Waverlee makes a showing through admissible evidence that the court finds to be credible, that gives rise to an impression of bias that is direct, definite, and capable of demonstration, as distinct from a "mere appearance" of bias that is remote, uncertain, and speculative.
For the foregoing reasons, the judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
Houston, Lyons, Brown, Johnstone, and Stuart, JJ., concur.
Moore, C.J., and See and Woodall, JJ., concur in the result.
[1] The record does not provide the outcome of the defendants' motion objecting to Walker's selection as arbitrator.
[2] The record compiled by Waverlee reflects that in McGrew, Walker found the dealer, Harold Allen's Mobile Home Factory Outlet, Inc., to be without fault. In Smith, Cedar Ridge Homes, Inc., the dealer, settled post-arbitration. In Clowers, there is nothing in the record regarding the disposition of the arbitration as to the dealer, Cedar Ridge Homes, Inc., but Walker did order all damages to be paid by the manufacturer, Grand Manor, Inc.
[3] The arbitrator's award for each case contained in the record does not explain how excessive moisture in the respective mobile homes would increase the likelihood that one would catch fire.
[4] Nothing in the record indicates the current status of those three cases or whether the awards were challenged or appealed.
[5] The record does not contain the date on which Williams or Waverlee learned of this information.
[6] The offer of proof does not further identify this case.
[7] While the opinion does not explicitly state that the trial court held an evidentiary hearing as to the property owners' claims, we infer, based on its findings, that such a hearing did take place.
[8] The opinion did not address the possibility that a settlement agreement could have been reached before November 1, 1988, but after October 21, 1988. The actual date the homeowner contended a settlement was reached is not contained in the opinion.
[9] The McMichaels petitioned this Court to dismiss Waverlee's appeal as untimely. That petition was addressed and denied in a separate order issued by this Court.
[10] The contacts arose out of instances where the law firm at which the arbitrator was "of counsel" was consulted, before the arbitration at issue, by the prevailing party for the purpose of obtaining representation in the dispute out of which the arbitration arose. In addition, the losing party sought to have the arbitrator's law firm, before his association with it, review an amendment to a distributorship agreement between the parties to the arbitration at issue in the case.
[11] We note that there was no transcript of the arbitration proceeding in University Commons-Urbana.