BRYAN, Justice.
The defendants below, J. Don Gordon Construction, Inc. (“Gordon Construction”), and Western Surety Company (“Western Surety”), appeal from the Baldwin Circuit Court’s judgment on an arbitration award entered against them. The defendants argue that the award should be vacated for various reasons under § 10(a) of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (“the FAA”). We affirm.
■ Dr. Ann Rankin Brown is a veterinarian who has been practicing in Baldwin County for several years. Around .2006, Brown decided to open her own veterinarian practice, and she and her husband purchased property on which to build a clinic. Brown testified that she and her husband formed Gone to the Dogs, LLC, to take ownership of the property and that she formed Rankin Animal Clinic, PC, as the veterinary entity that would rent the clinic from Gone to the Dogs. Other testimony indicates that Gone to the Dogs did in fact own the property and that Rankin Animal Center rented the property. In November 2007, Brown contracted with Gordon Construction to build a clinic on the property. Western Surety later issued a performance bond on the building project. Construction on the clinic began in January 2008. During construction, disputes arose between Brown and Gordon Construction regarding the quality of the work, and the project lagged. Eventually construction was completed, and the clinic opened in December 2008.
In October 2010, Brown sued Gordon Construction and Western Surety in the circuit court, alleging breach of contract. Gordon Construction, and Western Surety moved to compel arbitration, and the circuit court granted their-motion, apparently without opposition from Brown. The parties chose local attorney Marion E. Wynne to decide the case (“the arbitrator”). The parties also adopted a letter agreement written by the arbitrator in which they agreed to certain arbitration terms.
In March 2012, an amended complaint was filed naming as additional plaintiffs Gone to the Dogs and Rankin Animal Clinic, the two entities formed by Brown. Gordon Construction and Western Surety later filed an answer and counterclaim. The answer alleged, as an affirmative defense, that Gone to the Dogs and Rankin Animal Clinic were not parties to the construction contract and thus were not proper parties ⅛ the arbitration. Athough Brown apparently remained a nominal plaintiff, comments made by the arbitrator during the proceedings indicated that he viewed Gone to the Dogs and Rankin.Animal Clinic to be the real parties in interest. (For ease of discussion, we will sometimes refer to Brown, Gone to the Dogs, and Rankin Animal Clinic as “the plaintiffs.”) The arbitrator held hearings for 10 days over an extended period in 2012 and 2013.
In May 2013, the arbitrator issued a partial award determining liability and awarding damages (primarily against Gordon Construction); the award also stated that the arbitrator would later consider an additional award of legal fees. In July 2013, Gordon Construction and Western Surety filed a motion with the arbitrator seeking his recusal, which the arbitrator promptly denied; that motion will be discussed in more detail below. In November 2013, the arbitrator issued a final award (1) awarding $157,750.80 to Gone to the Dogs and Rankin Animal Clinic against *232 Gordon Construction; (2) awarding $91,272.40 to Gordon Construction against Gone to the Dogs and Rankin Animal Clinic (for a net award of $66,478.40 to Gone to the Dogs Rankin Animal Clinic against Gordon Construction); and (3) awarding $362,287 in legal fees, including attorney fees and expenses, to Gone to the Dogs and Rankin Animal Clinic against Western Surety.
The defendants appealed the arbitration award to the circuit court, and the circuit court entered a judgment on the award. See Rule 71B, Ala. R. Civ. P. (outlining the procedure for appealing ah arbitration award). The defendants filed a postjudgment motion to vacate the award, which' the circuit court denied. See id. The defendants then appealed to this Court.
“ ‘Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. On motions to confirm or to vacate an award, -it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Courts are; only to ascertain whether there exists. one of the specific grounds for vacation of an award. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging- the settlement of disputes by arbitration. An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. § 10].’ ”
R.P. Indus., Inc. v. S & M Equip. Co., 896 So.2d 460, 464 (Ala.2004) (quoting Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1380-81 (Ala.1992) (citations omitted)).
“Under the FAA, courts may vacate an arbitrator’s decision ‘only in very- unusual circumstances.’ First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). That limited judicial review, we have explained, ‘maintain[s] arbitration’s essential virtue of resolving disputes straightaway.’ Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 588, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008)....”
Oxford Health Plans LLC v. Sutter, — U.S. —, —, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013); “The [FAA] does not provide a dispute settlement mechanism; it facilitates private: dispute settlement. The standards for judicial intervention are therefore narrowly drawn to assure the basic integrity of the arbitration process without meddling in it.” Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 681 (7th Cir.1983).
Section 10(a) of the FAA establishes very limited grounds upon which a court may vacate an arbitration award. Tucker v. Ernst & Young, LLP, 159 So.3d 1263 (Ala.2014). The defendants first argue that the award should be vacated under § 10(a)(4), which allows a court to vacate' an arbitration award “where the arbitrators ' exceeded their powers.” “ ‘Section 10(a)(4) ... applies narrowly and only if the arbitrators decide an issue not submitted by the parties or grant relief not authorized in the arbitration agreement.’ ” Gower v. Turquoise Props. Gulf Inc., 191 So.3d 776, 782 (Ala.2013) (quoting Morgan Stanley & Co. v. Core Fund, 884 F.Supp.2d 1229, 1231 (M.D.Fla.2012) (emphasis omitted)). “[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).
*233 The defendants argue that the arbitrator exceeded his powers because, they say, he entered an award as to two entities, i. e., Gone to the Dogs and Rankin Animal Clinic, that were not parties to the construction contract containing the arbitration agreement. However, the record does not indicate that the defendants presented this argument during the arbitration proceedings, despite the fact that the two entities participated in the proceedings. As noted, Brown, who signed the contract, sued the defendants, who then compelled arbitration. An amended complaint was later filed naming as plaintiffs the two entities formed by Brown — Gone to the Dogs and Rankin Animal Clinic. .After the amended complaint was filed, the defendants did file an answer summarily alleging, as an affirmative defense, that Gone to the Dogs and Rankin Animal Clinic were not parties to the contract and thus were not proper parties to the arbitration. However, after that assertion, the. record does not indicate that the defendants ever presented a legal argumént to the arbitrator that he lacked authority to determine the rights and obligations of the two entities formed by Brown. Only after the defendants received an unfavorable award did they present their legal argument in any meaningful way, first arguing it to the circuit court in their motion to vacate the judgment entered on the arbitration award. The record does not indicate that the arbitrator had a fair chance to consider this argument; thus, the defendants cannot now rely on it in seeking to have the award vacated. Cf. Tucker, 159 So.3d at 1277 (declining to consider an argument regarding the arbitrability of an issue when the party failed to raise it to the arbitrator); and Environmental Barrier Co. v. Slurry Sys., Inc., 540 F.3d 598, 606 (7th Cir.2008) (same).
■ Regardless, the defendants’ argument is unpersuasive. In arguing that the arbitrator lacked the authority to issue an award as to Gone to the Dogs and Rankin Animal Clinic, the defendants cite the general rule that an arbitrator may not determine the rights or obligations of non-signatories to the arbitration agreement. See 25 Am.Jur.2d Alternative Dispute Resolution § 60 (2007). However, that is only the general rule; nonsignatories sometimes may properly participate .in the arbitration. See id. (discussing exceptions to the general rule); and Ex parte Stamey, 776 So.2d 85, 89 (Ala.2000) (same). The arbitrator’s comments during the proceedings indicate that he understood the two entities formed by Brown — Gone to the Dogs and Rankin Animal Clinic — to be the real parties in interest. The defendants essentially argue that the arbitrator misapplied the law by allowing those two entities into the arbitration. However, whether the arbitrator correctly made that decision is not properly before us; rather, our review is limited to whether the arbitrator had the authority to make that decision in the first place. Underlying legal error is not a ground for vacating an award. Gower, 191 So.3d at 785 (“The fact that the arbitrator appears to have misapplied the law in denying Gower’s claims, however, does not authorize this Court to vacate the arbitration award under ' 9 U.S.C. § 10. Federal authorities aré abundantly clear that an arbitrator does not exceed his or her powers when' the arbitrator misapplies the law.”); and Cavalier Mfg., Inc. v. Gant, 143 So.3d 762, 770 (Ala.2013). If the parties submitted the issue, or the arbitration agreement authorized the arbitrator to decide the issue, then the arbitrator did not exceed his or her authority in deciding the issue. Gower, 191 So.3d at 782 (stating that § 10(a)(4) applies narrowly and only if the arbitrator decides an issue not submitted *234 by the parties or grants relief not authorized in the arbitration agreement). The defendants do not address the key question whether the arbitrator had the authority to make the decision to allow Gone to the Dogs and Rankin Animal Clinic into the arbitration. Thus, we decline to consider this argument further.
The defendants next argue that the arbitrator-exceeded his powers because, they say, he failed to comply with the requirements of the letter agreement, which was written by the arbitrator. In the letter agreement, the parties agreed to certain arbitration terms. The defendants contend that the letter agreement indicates that the arbitrator agreed to issue an award consistent with the “appropriate” law. The defendants further contend that the arbitrator exceeded his powers because, they say, his award is inconsistent with Alabama contract law, which, the defendants say, is the “appropriate” law.
First, this argument was . not made in the defendants’ motion to vacate the arbitration award filed in the circuit court. We will not reverse a lower court’s judgment based on an argument that was never presented to that court. Taylor v. Stevenson, 820 So.2d 810, 814 (Ala.2001). Moreover, the defendants read too much into the relevant provision of the letter agreement. That provision simply states that the arbitrator shall be compensated at a certain rate for “any time spent ... researching and reading legal opinions, appropriate cases, statutory case law and statu[t]es.” The provision does not specify any standard the arbitrator was to apply.
The defendants next make three arguments alleging “evident partiality” by the arbitrator. Section 10(a)(2) of the FAA provides that a court may vacate an arbitration' award if there is “evident partiality” -by the arbitrator. We first address the defendants’ argument that the arbitrator’s failure to disclose information about his legal work in two other cases shows his evident partiality.- During the arbitration proceedings, attorney A. Clay Rankin represented the plaintiffs. At the time, Rankin was employed with Hand Arendall, a large firm in Mobile. When the arbitration was initiated, another attorney with Hand Arendall was. representing the City of Fairhope and its mayor in a case in the circuit court. The arbitrator served as cocounsel in that case, representing Fairhope and the mayor. Eventually a second Hand Arendall attorney joined that case as cocounsel. During the arbitration proceedings, another case was initiated in the circuit court involving Fair-hope. The arbitrator and two Hand Aren-dall attorneys served as cocounsel for Fairhope in that case as well. Based on the arbitrator’s nondisclosure of his involvement in the two circuit court cases, the defendants argued in their motion to vacate that there-was evident partiality by the arbitrator. In response, the plaintiffs submitted, among other things, the arbitrator’s affidavit. In his affidavit, the arbitrator testified that he has represented Fairhope for a number of years, that he served as cocounsel with some Hand Aren-dall attorneys when Rankin was with the firm, that he did not retain Hand Arendall and the firm did-not retain him, that he did not work with or communicate with Rankin regarding the two circuit court cases in which he served as cocounsel with Hand Arendall attorneys, .that he had never worked with Rankin on a legal matter other than the present arbitration proceeding, and that he awarded in the arbitration award a “significantly less” amount in legal fees than those claimed by the plaintiffs.
In alleging evident partiality based on the arbitrator’s nondisclosure of information, the defendants apply and argue the wrong standard. The defendants, *235 citing the plurality opinion in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), seem to argue that an arbitrator is evidently partial under § 10 if there is even “the appearance of bias.” However, a majority of federal circuit courts — and this Court in Waverlee Homes, Inc. v. McMichael, 855 So.2d 493 (Ala.2003) — have not read Commonwealth Coatings as imposing the less-stringent “appearance of bias” standard. See Positive Software Solutions, Inc. v. New Century Mortg. Corp., 476 F.3d 278, 282 (5th Cir.2007), and cases cited therein; and Crouch Constr. Co. v. Causey, 405 S.C. 155, 167, 747 S.E.2d 482, 488 (2013). The correct standard under Waverlee Homes is whether there is a “reasonable impression of partiality,” and the defendants have not met that standard.
In Waverlee Homes, this Court, citing several federal cases,, concluded that evident partiality exists if there is a “reasonable impression of partiality.” 855 So.2d at 508. That is, .“ ‘[t]o demonstrate evident partiality under the FAA, the party seeking vacation has the burden of proving “that ‘a reasonable person would have to conclude that an arbitrator was partial’ to the other party to the arbitration.” ’ ” 855 So.2d at 507 (quoting Consolidation Coal Co. v. Local 1643, United Mine Workers of America, 48 F.3d 125, 129 (4th Cir.1995)). The alleged partiality must be “direct, definite, and capable of demonstration, as distinct from a ‘mere appearance’ of bias that is remote, uncertain, and speculative.” 855 So.2d at 508. “ ‘Furthermore, the party asserting evident partiality “must establish specific facts that indicate improper motives on the part of the arbitrator.””’ 855 So.2d at 507 (quoting Consolidation Coal, 48 F.3d at 129). “An arbitrator’s failure to disclose must involve a significant compromising connection to the parties.” Positive Software, 476 F.3d at 283. This is strong language, and it sets the bar high for a party alleging evident partiality of an arbitrator.
In this case, the undisclosed facts do not establish a reasonable impression of partiality. The defendants cite no case finding the existence of evident partiality under facts similar to those here. .On the other hand, courts have failed to find evident partiality on similar facts. For example, in Uhl v. Komatsu Forklift Co., 512 F.3d 294 (6th Cir.2008), the United States Court of Appeals for the Sixth Circuit qoncluded there was no evident partiality where an arbitrator failed to disclose that the arbitrator and one' party’s attorney “several years [before the arbitration] ... were co-counsel on two cases and ... on six other cases [the arbitrator] represented the plaintiff while [the attorney] represented the intervening plaintiff.” 512 F.3d at 307. The court described that relationship as “insignificant.” Id. In this case, the fact that the subject relationship occurred while the arbitration was pending does make for a closer relationship in that regard than the relationship in Uhl. However, importantly, in Uhl the arbitrator worked directly with an arbitration party’s attorney, while the arbitrator here simply served as cocounsel with other attorneys employed at the law firm where the plaintiffs’ attorney was employed. In this cáse, the arbitrator never worked with the attorney representing the plaintiffs in the arbitration. The relationship here appears to be no closer than the one found to be “insignificant” in Uhl.
Similarly, in Ormsbee Development Co. v. Grace, 668 F.2d 1140, 1149-50 (10th Cir.1982), an arbitrator did consulting work for companies that were represented by the law firm representing one of the parties in the arbitration.- The United *236 States' Court of Appeals for the Tenth Circuit concluded that the arbitrator’s nondisclosure of that information did not establish evident partiality. The court noted that the core of the movant’s argument was that the arbitrator and the law fern had “similar clients,” which is also true in this case of the arbitrator and Hand Arendall. 668 F.2d at 1150. The court further observéd that arbitrators are not required to “ ‘sever all their ties with the business world,’ ” Id. (quoting Commonwealth Coatings, 393 U.S. at 148).
In this case, any relationship between the arbitrator and the plaintiffs was indirect and remote. “An arbitrator’s failure to disclose must involve a significant compromising connection to the parties,” Positive Software, 476 F.3d at 282-83, and such a connection is absent here. In the two circuit court cases, the arbitrator served as cocounsel with attorneys employed by the same law firm that employed the attorney representing the plaintiffs. The arbitrator had nó direct relatiónship with the plaintiffs or their attorney, and there is no indication that the arbitrator had a financial interest related to the plaintiffs or Hand Arendall, Compare with Municipal Workers Comp. Fund, Inc. v. Morgan Keegan & Co., 190 So.3d 895 (Ala.2015) (finding evident partiality when an arbitrator failed to disclose substantial financial dealings involving a party); and Commonwealth Coatings, 393 U.S. at 146 (finding evident partiality when a business relationship between an arbitrator and a party was “repeated and significant”). The facts here simply do not demonstrate evident partiality with respect to the nondisclosures. In short, a reasonable person would not have to conclude, based on these facts, that the arbitrator was partial to the plaintiffs. Waverlee.
The defendants also argue that the arbitrator displayed evident partiality by providing the affidavit in which he addressed the allegations that he was biased. The arbitrator furnished the affidavit at the request of the plaintiffs, who submitted it in response to the defendants’ motion to vacate the award. The defendants argue that the arbitrator, by providing the affidavit, violated provisions of a code of ethics for arbitrators prohibiting arbitrators from assisting in the enforcement of the award and prohibiting arbitrators from communicating with a party ex parte. We do not need to decide whether the arbitrator violated the code of ethics. Insofar as the defendants perhaps argue that the alleged violations require the award to be vacated, that argument is misplaced. Such codes “do not have the force of law” and “are not the proper starting point for an inquiry into an award’s validity under [the FAA].” Merit Ins., 714 F.2d at 680. See also Positive Software, 476 F.3d at 285 n. 5; Montez v. Prudential Sec., Inc., 260 F.3d 980, 984 (8th Cir.2001); and ANR Coal Co. v. Cogentrix of North Carolina, Inc., 173 F.3d 493, 499 (4th Cir.1999). Insofar as the defendants argue that the content of the affidavit somehow indicates evident partiality, that-argument also fails. Nothing in the affidavit suggests that the high threshold of evident partiality has been met. The arbitrator was simply defending himself against the defendants’ allegations of bias.
The defendants also argue that the award of legal fees against Western Surety should be vacated because, they say, the arbitrator showed evident partiality by refusing to recuse himself and then levying the legal fees. In this final argument alleging evident partiality, the defendants challenge only that part of the award awarding legal fees..
*237 In making their argument, the defendants emphasize two. things: the arbitrator’s denial of their. motion seeking his recusal and the arbitrator’s later award of legal fees. In May 2013, the arbitrator issued a partial award determining liability and awarding damages and indicating that he would later consider an additional award of legal fees. Two months later, the defendants filed a motion with the arbitrator seeking his recusal, which the arbitrator promptly denied. The recusal motion was supported by the affidavit of Vince Boothe. In the affidavit, Boothe alleged that he owns 95% of Gordon Construction; this fact apparently was not revealed during the hearings. Boothe then referenced a recent trial in another case in which the arbitrator’s daughter had accused her ex-husband of domestic violence. Boothe testified that, on May 3, 2013 (about' two weeks before the arbitrator, issued the partial award), Boothe’s son-in-law testified adversely to the position of the arbitrator’s daughter in the trial of that case. Following the trial, the current husband of the arbitrator’s daughter sent text messages to Boothe’s daughter, accusing Boothe’s son-in-law of lying under oath. The arbitrator’s daughter’s ex-husband then filed a motion seeking to have held in contempt the daughter’s current husband, claiming that the text messages were inappropriate and tantamount to witness intimidation; that motion was attached to the motion seeking the arbitrator’s recusal in this ease. Based on those facts, the defendants unsuccessfully argued to the arbitrator that he should have recused himself instead of proceeding to determine the award of legal fees.
The defendants also note certain testimony presented in the September 2013 hearing regarding legal fees, .two months after the recusal motion was filed and denied. In that hearing, there was testimony presented that Boothe, among others, was an indemnitor to Western Surety-regarding Western Surety’s performance bond on the construction project. The arbitrator then levied $362,287 in .legal fees against Western Surety.
The gist of the defendants’ argument seems to be as follows. No later than July 2013, when the recusal motion was filed, the arbitrator'was made' aware of both (1) the situation involving his daughter, her husband, and members of Boothe’s family and (2) evidence indicating that Boothe owned 95% of Gordon Construction, one of the parties to the arbitration proceeding. When the hearing regarding legal fees, was held in September 2013, there was testimony presented indicating that Boothe, among others, was an indemnitor to Western Surety regarding Western Surety’s performance bond! Then, in November 2013, the arbitrator levied $362,287 in legal fees against Western Surety,. a total the defendants note is much greater than the damages awarded either to Brown’s two entities ($157,75.80) or to Gordon Construction ($91,272.40). Thus, say the defendants, the arbitrator must have been partial in refusing to recuse himself and in awarding the legal fees.
We are unpersuaded by the defendants’ argument. The arbitrator’s failure to re-cuse himself upon learning the information about the domestic-violence case does not indicate evident partiality. The large award of legal fees against Western Surety — an award the arbitrator testified was “significantly less” than the amount claimed by the plaintiffs — does not indicate evident partiality, either. The defendants basically ask us to assume that the arbitrator was partial based on .evidence indicating that membérs of Boothe’s family and members of the arbitrator’s family did not see eye-to-eye. The standard announced in Waverlee is too demanding for such an assumption; to prevail, the defendants *238 must establish specific facts that indicate improper motives on the part of the arbitrator. The facts here fall short. The alleged partiality at most suggests a “ ‘mere appearance’ of bias that is remote, uncertain, and speculative” rather than “direct, definite, and capable of demonstration.” Waverlee, 855 So.2d at 508, 507. A reasonable person would not have to conclude that the arbitrator was partial given these facts.
In closing, we emphasize that, under the FAA, our review of an arbitration award is very limited. The defendants have not established any of the limited grounds for vacating an award under § 10(a) of the FAA. Accordingly, we affirm the circuit court’s judgment affirming the arbitration award.
AFFIRMED.
BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MOORE, C.J., and MURDOCK, J., concur in the result.
STUART, J., recuses herself.