BOLIN, Justice.
Terminix International Company, L.P., and Terminix International, Inc. (collectively “Terminix”), appeal from the trial court’s order denying Terminix’s motion to vacate or modify an arbitration award entered in favor of Walter F. Scott III and his wife, Paige M. Scott. Terminix also appeals from the trial court’s order referring to arbitration the Scotts’ motion for sanctions brought pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975 (“ALAA”).

Facts and Procedural History

The Scotts’ house was inspected for termites by Cook’s Pest Control in June 1995. The inspection revealed no active termite infestation at that time. However, the termite inspection indicated that there had *514 been a previous infestation, which was treated in 1986.
In 2001, the Scotts discovered suspected termite damage in the downstairs portion of their house. The Scotts contacted Cook’s, which determined that an active termite infestation was present in the Scotts’ house. However, the Scotts themselves paid for the damage to be repaired because their contract with Cook’s required Cook’s only to re-treat the damaged area and not to repair it. The Scotts subsequently canceled their termite-service contract with Cook’s.
In April 2001, the Scotts entered into a termite-eontrol-services contract with Ter-minix for a service known as the Termite Baiting System Protection Plan. The sales literature described the baiting plan as “the most effective subterranean termite elimination or control method available” and stated that the baiting plan constituted an early warning device that “constantly helps to monitor your property for new subterranean termite colonies.” Pursuant to the baiting plan, Terminix agreed, among other things, to install the baiting system, to monitor the system, and to add or remove termite bait from the system as needed.
In 2004 or 2005, Terminix lost the licensing rights to service or sell the termite-baiting-system plan. As a result, Terminix was no longer allowed to monitor or service the baiting system it had installed at the Scotts’ house. The Scotts were not informed of this development until 2007, when they received a letter from Terminix entitled “Important Information About Your Terminix Protection,” which encouraged the Scotts to “update” their baiting system with another Terminix service or to convert their baiting system to the Termi-nix Liquid Defend System. On April 18, 2007, the Scotts entered into a new termite-service contract with Terminix for the liquid-defend system. This contract contains a box located at the top of the contract in which the following appears in boldface type: “THIS CONTRACT PROVIDES FOR RETREATMENT OF A STRUCTURE AND THE REPAIR OF DAMAGES CAUSED BY SUBTERRANEAN TERMITES WITHIN THE LIMITS STATED IN THIS CONTRACT.” (Capitalization in original.) The contract also contained the following relevant provisions:
“2. Future Damage. Limitation of Liability. In consideration of the sums charged by Terminix hereunder and as a liquidated damage and not as a penalty, and ¡notwithstanding any contract, tort or other claim that Terminix shall not have properly performed its duties to purchaser, the sole responsibility of Ter-minix in the event of a claim shall be to provide retreatment found necessary by Terminix free of charge and to arrange and pay for the necessary repairs or replacement by a contractor chosen by Terminix of the cost of labor and materials to repair new subterranean termite damage occurring after the effective date of this agreement to the extent provided herein. Purchaser expressly releases Terminix from, and agrees to indemnify Terminix with respect to any other obligations to purchaser whatsoever....
[[Image here]]
“6. Disclaimer.... Except as otherwise prohibited by law, Terminix disclaims and shall not be responsible for any liability for direct, indirect, special, incidental, consequential, exemplary, punitive, and/or loss of enjoyment damages. The obligations of Terminix specifically stated in this agreement are given in lieu of any other obligation or responsibility, express or implied, including any representation of merchant *515 ability or fitness for a particular purpose.
[[Image here]]
“12. Mandatory Arbitration. Purchaser and Terminix agree that any claim, dispute, or controversy (‘Claim’) between them or against the other or the employees, agents or assigns of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement, including but not limited to any tort or statutory Claim, shall be resolved by neutral binding arbitration by the National Arbitration Forum (‘NAF’) under the Code of Procedure (‘Code’) of the NAF in effect at the time the Claim is filed.... Each party shall be responsible for paying its own fees, costs, and expenses and the arbitration fees as designated by the Code.... The decision of the arbitrator shall be a final and binding resolution of the Claim.... Neither party shall sue the other party with respect to any matter in dispute between the parties other than for enforcement of this arbitration agreement or of the arbitrator’s award. THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE BUT THEY CHOOSE TO HAVE ANY DISPUTES DECIDED THROUGH ARBITRATION.”
(Capitalization in original.)
No live termite infestation has been found in the Scotts’ house since Terminix began servicing the house in 2001. However, in February 2010, a Terminix employee discovered extensive termite damage throughout the Scotts’ house. Terminix agreed to repair the damage. Terminix states that it had expended approximately $52,645 in repairs when a dispute arose with the Scotts over the scope of repairs to be made in a bathroom.
On October 18, 2010, the Scotts petitioned the trial court, pursuant to the Federal Arbitration Act (“the FAA”), to arbitrate certain fraud claims arising from their dispute with Terminix. The Scotts stated that the dispute with Terminix was governed by a mandatory arbitration provision contained in the parties’ April 2007 service contract, which identified the National Arbitration Forum (“NAF”) as the proper body to arbitrate any disputes arising between the parties under the April 2007 service contract. However, the Scotts noted that NAF had recently entered into a consent decree with the State of Minnesota, whereby NAF had agreed to divest itself completely" “of any business related to the arbitration of consumer disputes.” [1] Pursuant to the consent decree, NAF was prohibited from administering or participating in any consumer arbitration proceedings after July 24, 2009. The Scotts contended that, it being impossible for NAF to administer the arbitration in this dispute, the trial court was empowered under the FAA and Alabama law to appoint an arbitrator in this cause, to refer this cause to arbitration, and to retain jurisdiction to confirm any award made by the arbitrator. The Scotts provided the trial court with the names and contact information of six local attorneys who had previously agreed to serve as arbitrators in the matter if appointed by the trial court.
*516 On October 22, 2010, the trial court entered an order appointing Kenneth 0. Simon as arbitrator in the dispute between the Scotts and Terminix. Simon was not one of the six attorneys whose names were provided to the trial court by the Scotts. The trial court also ordered that the rules of the FAA would apply to and govern the arbitration between the Scotts and Termi-nix.
The arbitration proceeding was conducted on June 1 — 3, 2011, at which time the Scotts’ fraud claims were tried before the arbitrator. The arbitration hearing was not transcribed by a court reporter or otherwise recorded. While the arbitration matter was under submission, the trial court set a status conference on October 6, 2011, for a progress report of the arbitration. On September 16, 2011, the Scotts informed Simon of this development, and he responded that the arbitration decision would be released before the status conference. The arbitration decision was not released before the October 2011 status conference.
On January 9, 2012, the Scotts notified Simon by electronic mail (“e-mail”) that the arbitration matter had been under submission for eight months and urged him to issue a decision that would be “life altering for [the Scotts] regardless of its terms.” On January 12, 2012, Simon notified counsel for the Scotts by e-mail that the final arbitration decision was “ready” and that the arbitration fee of $20,000 — each party being responsible for $10,000 — would need to be paid before he would release the decision to the parties. On January 19, 2012, the Scotts advanced to Simon a check for $15,000, which represented the balance owed on the arbitration fee.[2] The $15,000 paid to Simon by the Scotts represented the $5,000 balance of their share of the arbitration fee in addition to Termi-nix’s $10,000 share of the arbitration fee it was obligated to pay. The Scotts paid Terminix’s portion of the arbitration fee in order to avoid any potential further delay in the release of the arbitration decision.[3] The Scotts requested of Simon that the payment of Terminix’s share of the arbitration fee by them be “dealt with in an explicit and equitable manner” in the final arbitration decision.
Simon released the arbitration decision to the parties on January 19, 2012. Simon’s order was lengthy and contained detailed findings of facts and conclusions of law. Simon found, among other things, that Terminix had fraudulently induced the Scotts to enter into the service contracts in 2001 and 2007. Therefore, he concluded that neither the “contracts nor the limitations of remedies and damages contained in these contracts [were] enforceable. Ex parte AIG Baker Orange Beach Wharf, LLC, 49 So.3d 1198 (Ala. 2010); Ex parte Leasecomm Corp., 879 So.2d 1156 (Ala.200S); and Hillcrest Center, Inc. v. Rone, 711 So.2d 901 (Ala.1997).” Simon awarded the Scotts compensatory damages of $500,000, punitive damages of $500,000, and ordered Terminix to pay “all costs and arbitration fees.” The final award reads as follows:
“The arbitrator finds that Terminix should be liable for all costs and arbitration fees. Claimants may submit a petition for costs for substantially the same costs as would be recoverable in an Alabama circuit court non-jury trial. Although the Scotts are obligated to directly pay the arbitrator for their share *517 of arbitration costs, Terminix shall also reimburse the Scotts for their share of the arbitrator’s fees and expenses.
[[Image here]]
“Accordingly, the arbitrator finds that Plaintiffs Walter and Paige Scott are entitled to recover the total amount of $1,000,000.00 (ONE MILLION AND NO/100 DOLLARS) [from Terminix], together with the Scotts’ share of arbitration fees of $20,000.00 (TWENTY THOUSAND AND NO/100 DOLLARS). All payments shall be made within 30 days from the date of this Order.”
On January 27, 2012, Simon filed in the trial court a “Notice of Filing” indicating that the “Arbitrator’s Decision and Award” had been entered in the case.[4] On February 8, 2012, Simon filed the “Arbitrator’s Decision and Award” in the trial court. On February 21, 2012, Terminix filed in the trial court pursuant to Rule 71B, Ala. R. Civ. P., its notice of appeal of the “Arbitrator’s Decision and Award.”
Subsequent to Simon’s rendering his decision and award, the Scotts moved him to award them costs and to recover the $10,000 arbitration fee they had advanced on behalf of Terminix. Following the filing of its appeal of the arbitration decision in the trial court, Terminix moved Simon to reconsider his decision and award, arguing, among other things, that he failed to disclose a conflict of interest; that the Scotts’ counsel encouraged partiality and misbehavior; that the circumstances surrounding the payment of the arbitration fee by the Scotts gave a reasonable impression of partiality and misbehavior; and that the arbitration award fails to follow the applicable substantive law and is erroneous.
On February 29, 2012, Simon issued an order granting the Scotts’ motion to the extent that it sought recovery of the $10,000 arbitration fee advanced on behalf of Terminix and denied the motion with regard to the other costs sought by the Scotts. On that same date, Simon also issued an order denying Terminix’s motion to reconsider, stating:
“There is likely dispute as to whether the arbitrator has jurisdiction to reconsider an already decided matter. Nevertheless, the arbitrator has fully considered the merits of Terminix’s motion, as well as its allegations of bias and nondisclosure, and finds that the motion is without merit. Among other things, the arbitrator informed the parties of a closed matter in which his law firm represented a party adverse to Terminix several years ago, as well as the ongoing service provided to him by Terminix, and no objection was raised.”
On March 2, 2012, Simon filed in the trial court a notice of and the order on the Scotts’ motion for costs, as well as the order denying Terminix’s motion to reconsider.
On March 26, 2012, the trial court entered a judgment “consistent with the arbitrator’s cost award” ordering Terminix to pay to the Scotts $10,000 and stating that “this judgment is in addition to and separate from the One Million Twenty Thousand and no/100’s dollar ($1,020,-000.00) judgment on the Arbitration Award.” On April 26, 2012, the trial court entered as a final judgment the arbitration decision and award of $1,020,000 in favor of the Scotts stating “upon which let execution issue.” The Scotts immediately sought writs of execution. The trial court *518 issued a total of six writs of execution on May 1 and May 23, 2012.
On May 24, 2012, Terminix moved the trial court pursuant to Rule 59, Ala. R. Civ. P., to vacate the judgment entered on the arbitration decision and award. Ter-minix raised as issues in the motion to vacate those same issues asserted in its motion to reconsider filed with Simon in the arbitration forum, including the evident partiality on the part of Simon by failing to disclose a conflict of interest and Simon’s failure to abide by the limitations of remedies and damages contained in the termite-service contract. Also on May 24, 2012, Terminix moved the trial court pursuant to Rule 62(b), Ala. R. Civ. P., to stay the execution of the “March 26, 2012, ... conditional judgment in favor of the [Scotts] in the sum of $1,030,000” pending the trial court’s ruling on Terminix’s pending postjudgment motion. Terminix posted a bond in the amount of $1,287,500 to secure the stay.
On May 25, 2012, the trial court set for a hearing on June 14, 2012, both the motion to stay execution of judgment and the motion to vacate the arbitration judgment filed by Terminix. However, on May 30, 2012, the Scotts served Terminix with the writs of execution issued by the trial court. In response to the Scotts’ having served the writs of execution, Terminix requested an emergency hearing with the trial court for May 31, 2012, on its pending motion to stay the execution of the arbitration judgment. During the hearing on May 31, 2012, counsel for the Scotts attempted to file in open court a number of pleadings, including, according to counsel, a response in opposition to Terminix’s postjudgment motion to vacate the arbitration judgment.[5] The trial court did not accept the attempts at filing the pleadings in open court. Also on May 31, 2012, Terminix amended its motion to stay execution of the judgment in favor of the Scotts to state that the judgment was entered on April 26, 2012, rather than March 26, 2012.
On June 1, 2012, the Scotts filed the following pleadings in the trial court: (1) “Motion to Require Filing a Notice of Appearance and Pro Hac Vice Application by Defendants’ Counsel and Compliance with Rule 4 Service Requirements”; (2) “Motion for Relief Pursuant to the Alabama Litigation Accountability Act (‘ALAA’), [§ 12-19-270 et seq., Ala Code 1975]”; (3) “Petition to Appoint Arbitrator to Hear ALAA, Malicious Prosecution, and Abuse of Process Claims”;[6] (4) “Opposition to Defendant’s ‘Motion to Stay Execution and Posting of Post-Trial Bond’”; and (5) “Motion to Strike Defendants’ ‘Corrected Motion to Stay Execution and Posting of Post-Trial Bond.’ ” The motions for relief pursuant to the ALAA and to appoint an arbitrator to hear the ALAA claim were set for a hearing on June 14, 2012. It does not appear from the record that the Scotts *519 ever filed in the trial court their opposition to Terminix’s postjudgment motion to vacate the arbitration judgment.
The Scotts alleged in their motion seeking relief pursuant to the ALAA that Ter-minix’s notice of appeal of the arbitrator’s decision and award filed on February 21, 2012; the motion to stay execution of the arbitration judgment filed on May 24, 2012; and the postjudgment motion to vacate the arbitration judgment filed on May 24, 2012, were without substantial justification and were interposed for the purpose of delay or harassment or to unnecessarily expand the proceedings. The Scotts asserted that they were entitled to an award of costs and a reasonable attorney fee and that the ALAA claim was due to be submitted to arbitration. The Scotts requested that the trial court appoint Simon to arbitrate their ALAA claim against Termi-nix, arguing that he was uniquely qualified to do so because he had arbitrated the underlying dispute between the parties.
On June 1, 2012, Terminix filed a reply to the Scotts’ opposition to its motion to stay execution of the arbitration judgment. On that same date, Terminix also moved the trial court to vacate or quash the writs of execution issued by the trial court. Terminix argued that these writs of execution were issued in violation of the automatic 30-day stay under Rule 62(a), Aa. R. Civ. P.
On June 5, 2012, the trial court entered separate orders that, among other things: (1) granted Terminix’s motion to vacate or quash the writs of execution entered in violation of the automatic 30-day stay pursuant to Rule 62(a), Aa. R. Civ. P.; (2) denied Terminix’s postjudgment motion to vacate the arbitration judgment; (3) granted the motion to refer the Scotts’ ALAA claim to arbitration while expressly reserving jurisdiction to dispose of post-arbitration pleadings; and (4) granted the Scotts’ motion to appoint Simon as arbitrator of their ALAA claim.
On June 8, 2012, Terminix appealed the trial court’s final judgment of the arbitration decision and award entered in favor of the Scotts on April 26, 2012. On July 11, 2012, Terminix appealed the trial court’s order of June 5, 2012, referring the Scotts’ ALAA claim to arbitration. We consolidated the two appeals for the purpose of issuing one opinion.

Standard of Review

This Court has stated:
“In R.P. Industries, Inc. v. S & M Equipment Co., 896 So.2d 460 (2004), this Court reviewed the trial court’s order granting a motion to confirm an arbitration award and denying the opposing party’s motion to vacate that award. We stated:
“ ‘ “Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. Transit Casualty Co. v. Tren-wick Reinsurance Co., 659 F.Supp. 1346 (S.D.N.Y.1987), affirmed, 841 F.2d 1117 (2d Cir.1988); Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Application of States Marine Corp. of Delaware, 127 F.Supp. 943 (S.D.N.Y.1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. Saxis Steamship Co. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration. United Steelworkers of America v. *520 Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Virgin Islands Nursing Association’s Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir.1981). An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. § 10]. Catz American Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y.1968).” ’
“896 So.2d at 464 (quoting Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1380-81 (Ala. 1992)). The standard by which an appellate court reviews a trial court’s order confirming an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and findings of fact are reviewed only for clear error. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir. 2002).”
Hereford v. D.R. Horton, Inc., 13 So.3d 375, 378 (Ala.2009).
As for the order of the trial court referring the Scotts’ ALAA claim to arbitration, this Court has stated:
“We conduct a de novo review of a trial court’s order compelling arbitration. Smith v. Mark Dodge, Inc., 934 So.2d 375, 378 (Ala.2006).
“ ‘The party seeking to compel arbitration must first prove both that a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce .... Once this showing has been made, the burden then shifts to the nonmovant to show that the contract is either invalid or inapplicable to the circumstances presented.’
“Smith, 934 So.2d at 378.”
Ritter v. Grady Auto. Group, Inc., 973 So.2d 1058,1060-61 (Ala.2007).

Discussion

Case No. 1111232

I. Jurisdiction
As an initial matter, the Scotts challenge this Court’s jurisdiction as to a portion of the judgment entered on the arbitration award. The Scotts contend that Simon issued two arbitration awards in this case: the $1,020,000 award issued on January 19, 2012, and made final by the trial court on April 26, 2012, and the $10,000 award issued on February 29, 2012,[7] and made final by the trial court on March 26, 2012. The Scotts argue that this Court is without jurisdiction to consider that award because, they say, Terminix failed to properly appeal the $10,000 award.[8] Terminix *521 contends that the $10,000 award was interlocutory in nature and was not appealable until the trial court entered its final judgment on the arbitration decision and award on April 26, 2012.
Rule 71B, Ala. R. Civ. P., establishes the procedure to follow in appealing from an arbitration award:
“(a) Who may appeal. Any party to an arbitration may file a notice of appeal from the award entered as a result of the arbitration.
“(b) When filed. The notice of appeal shall be filed within thirty (30) days after service of notice of the arbitration award. Failure to file within thirty (30) days shall constitute a waiver of the right to review.
“(c) Where filed. The notice of appeal shall be filed with the clerk of the circuit court where the action underlying the arbitration is pending or if no action is pending in the circuit court, then in the office of the clerk of the circuit court of the county where the award is made.
“(d) What filed. With the notice of appeal, the appellant shall file a copy of the award, signed by the arbitrator, if there is only one, or by a majority of the arbitrators, along with the submission to the arbitrator or arbitrators and any supporting documents or record of the proceedings, if available. If no record is available, the appellant shall so state. If a record is to be prepared but is not completed within the time provided in paragraph (b) of this rule, the appellant shall so state in the notice of appeal and shall file the record within thirty (30) days after the filing of the notice of appeal, unless the court for good cause shown shall allow additional time.
“(e) How served. If the arbitration arose out of a pending action, service shall be made as provided in Rule 5. If there is no action pending, service shall be made as provided in Rules 4 through 4.4, and upon any counsel who appeared in the arbitration for the party being served.
“(f) Procedure after filing. The clerk of the circuit court promptly shall enter the award as the final judgment of the court. Thereafter, as a condition precedent to further review by any appellate court, any party opposed to the award may file, in accordance with Rule 59, a motion to set aside or vacate the judgment based upon one or more of the grounds specified in Ala.Code 1975, § 6-6-14, or other applicable law. The court shall not grant any such motion until a reasonable time after all parties are served pursuant to paragraph (e) of this rule. The disposition of any such motion is subject to civil and appellate rules applicable to orders and judgments in civil actions.
“(g) Appellate review. An appeal may be taken from the grant or denial of any Rule 59 motion challenging the award by filing a notice of appeal to the appropriate appellate court pursuant to Rule 4, Alabama Rules of Appellate Procedure.”
As discussed above, Simon required that the arbitration fee of $20,000 — each party being obligated to pay $10,000 — be paid before he would release the arbitration decision and award to the parties. The Scotts paid their $10,000 share of the arbitration fee and also advanced to Simon Terminix’s $10,000 share of the- arbitration fee in order to expedite the release of the arbitration decision and award. Upon ad *522 vancing Terminix’s portion of the arbitration fee to Simon, the Scotts requested that their payment of Terminix’s share of the arbitration fee be “dealt with in an explicit and equitable manner” in the final arbitration decision. Simon expressly addressed the matter of the $20,000 arbitration fee in the arbitration decision and award, stating:
“The arbitrator finds that Terminix should be liable for all costs and arbitration fees. Claimants may submit a petition for costs for substantially the same costs as would be recoverable in an Alabama circuit court non-jury trial. Although the Scotts are obligated to directly pay the arbitrator for their share of arbitration costs, Terminix shall also reimburse the Scotts for their share of the arbitrator’s fees and expenses.
[[Image here]]
“Accordingly, the arbitrator finds that Plaintiffs Walter and Paige Scott are entitled to recover the total amount of $1,000,000.00 (ONE MILLION AND NO/100 DOLLARS) [from Terminix], together with the Scotts’ share of arbitration fees of $20,000.00 (TWENTY THOUSAND AND NO/100 DOLLARS). All payments shall be made within 30 days from the date of this Order.”
(Capitalization in original.)
On January 27, 2012, Simon notified the trial court that a decision and award had been issued as a result of the arbitration proceeding. On February 8, 2012, Simon filed the “Arbitrator’s Decision and Award” in the trial court. On February 21, 2012, Terminix filed in the trial court pursuant to Rule 71B, Ala. R. Civ. P., its notice of appeal of the “Arbitrator’s Decision and Award.”
In the meantime, the Scotts had petitioned Simon, as he had invited them to do in the arbitration decision, to award them costs incurred during the arbitration proceeding. The Scotts included in their petition for costs a request for the $10,000 arbitration fee that they had advanced on behalf of Terminix. On February 29, 2012, Simon issued an order granting the Scotts’ motion to the extent that it sought recovery of the $10,000 arbitration fee advanced on behalf of Terminix and denied the motion as to the other costs sought by the Scotts. On March 2, 2012, Simon filed in the trial court a notice of and the order on the Scotts’ motion for costs. On March 26, 2012, the trial court entered a judgment “consistent with the arbitrator’s cost award” ordering Terminix to pay to the Scotts $10,000 and stating that “this judgment is in addition to and separate from the One Million Twenty Thousand and no/ 100’s dollar ($1,020,000.00) judgment on the Arbitration Award.” On April 26, 2012, the trial court entered as a final judgment the arbitration decision and award of $1,020,000 in favor of the Scotts.
Viewing the $10,000 award issued by Simon on February 29, 2012, as an appealable award, separate and apart from his earlier award of $1,020,000, as the Scotts argue that we should, the Scotts are correct that Terminix has failed to file a timely appeal of that award pursuant to Rule 71B, Ala. R. Civ. P. Subsections (b) and (c) of Rule 71B require that a notice of appeal be filed in the trial court within 30 days after notice of service of the arbitration award has been filed. Terminix did not file a notice of appeal from the $10,000 award in the trial court. Further, as a condition precedent to further review by an appellate court, Rule 71B requires that a party opposing the arbitration award file a Rule 59, Ala. R. Civ. P., motion to set aside or vacate the judgment following the trial court’s entry of the arbitration award as a final judgment. Terminix filed no Rule 59 motion to set aside or vacate the *523 trial court’s entry on March 26, 2012, of the $10,000 award as a final judgment.
To the extent that Simon entered an order on February 29, 2012, granting the Scotts’ motion to recover Terminix’s $10,000 share of the arbitration fee they had advanced on Terminix’s behalf, that order was redundant in light of the facts that Simon had previously awarded the Scotts the $20,000 arbitration fee in the arbitration award and that the trial court subsequently entered a final judgment on that award. See generally Sheffield, v. Stoudenmire, 553 So.2d 125, 127 (Ala.1989) (second appeal from same judgment dismissed as redundant). The Scotts’ argument ignores the fact that Simon addressed the issue of the arbitration fee in his arbitration decision and award issued on January 19, 2012. The Scotts specifically requested that Simon address in his decision and award the fact that they had advanced Terminix’s $10,000 share of the arbitration fee. Simon addressed the issue of the arbitration fee in the decision, holding Terminix “hable for all costs and arbitration fees” and awarding the Scotts $20,000 as their share of the arbitration fees. Simon filed his notice of decision in the trial court on January 27, 2012, and filed the arbitration decision and award in the trial court on February 8, 2012. On February 21, 2012, Terminix filed in the trial court pursuant to Rule 71B a timely notice of appeal of the arbitration decision and award. On April 26, 2012, the trial court entered a final judgment as to the arbitration award. Pursuant to Rule 71B(f), Ala. R. Civ. P., Terminix filed a timely Rule 59 motion to vacate the arbitration judgment entered by the trial court. Terminix’s Rule 59 motion to vacate was denied by the trial court on June 5, 2012. Terminix filed a timely notice of appeal in this Court on June 8, 2012. Accordingly, the arbitration judgment entered by the trial court in the amount of $1,020,000, including the $20,000 arbitration fee in favor of the Scotts, is properly before this court.
II. Rule 59 Motion to Vacate
The trial court entered a final judgment as to the arbitration decision and award on April 26, 2012. On May 24, 2012, Terminix moved the trial court pursuant to Rule 59, Ala. R. Civ. P., to vacate the final judgment, arguing, among other things, that Simon had demonstrated an evident partiality by failing to disclose a conflict of interest and that Simon had failed to abide by the limitations of remedies and damages contained in the termite-service contact resulting in an erroneous arbitration award. On May 25, 2012, the trial court set the motion to vacate the arbitration judgment for a hearing on June 14, 2012. However, on June 5, 2012, the trial court entered an order denying Terminix’s post-judgment motion to vacate the arbitration judgment despite having scheduled the motion for a hearing on June 14, 2012. Terminix argues that the trial court committed reversible error when it entered its order denying its postjudgment motion to vacate the arbitration judgment without first conducting a hearing on the motion.
Rule 59(g), Ala. R. Civ. P., provides that a postjudgment motion filed pursuant to Rule 59 “shall not be ruled upon until the parties have had opportunity to be heard thereon.” Rule 71B(f), Ala. R. Civ. P., specifically provides that the disposition of a Rule 59 motion to set aside or vacate an arbitration award entered as a final judgment by the trial court “is subject to civil and appellate rules applicable to orders and judgments in civil actions.” This Court has stated:
‘“In general, whether to grant or to deny a posttrial motion is within the sound discretion of the trial court, and the exercise of that discretion will not be *524 disturbed on appeal unless by its ruling the court abused some legal right and the record plainly shows that the trial court erred. See Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38 (Ala.1990). However, if a party requests a hearing on its motions for a new trial, the court must grant the request. Rule 59(g), Ala. R. Civ. P. See Walls v. Bank of Prattville, 554 So.2d 381, 382 (Ala.1989) (“[W]here a hearing on a motion for [a] new trial is requested pursuant to Rule 59(g), the trial court errs in not granting such a hearing.”). Although it is error for the trial court not to grant such a hearing, this error is not necessarily reversible error. For example, if an appellate court determines that there was no probable merit to the motion, it may affirm based on the harmless-error rule. See Rule 45, Ala. R.App. P.; and Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala.1993) (“failure to grant a hearing on a motion for new trial pursuant to Rule 59(g) is reversible error only if it ‘probably injuriously affected substantial rights of the parties’ ”).’ ”
Ex parte Evans, 875 So.2d 297, 299-300 (Ala.2003) (quoting Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala.2000)).
As discussed above in note 5, a dispute exists between the parties as to whether Terminix’s postjudgment motion to vacate was argued and considered by the trial court during the emergency hearing held on May 31, 2012. Terminix contends that the sole matter argued at the emergency hearing was its motion to stay execution of the arbitration judgment. The Scotts contend that they requested that Terminix’s postjudgment motion to vacate the arbitration judgment also be heard and that the trial court did hear arguments on that motion as well. The emergency hearing on May 31, 2012, was not recorded or transcribed. On September 21, 2012, the Scotts moved the trial court pursuant to Rule 10(f), Ala. R.App. P., to supplement the record on appeal to reflect that Terminix’s postjudgment motion to vacate the arbitration judgment was heard by the trial court at the emergency hearing on May 31, 2012. During the hearing on the Scotts’ motion to supplement the record on appeal, the trial court acknowledged that “[f]rom everything that [it had before it, it could not] see where the motion [to vacate] was heard.” Thus, on October 3, 2012, the trial court entered an order denying the Scotts’ motion to supplement the record on appeal. Because the trial court erred in failing to allow Terminix to be heard on its postjudgment motion to vacate the arbitration judgment, we must determine whether the failure to conduct a hearing on the motion was “harmless error.” “ ‘ “ ‘Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.’ ” ’ ” Ware v. Deutsche Bank Nat’l Trust Co., 75 So.3d 1163, 1172 (Ala.2011)(quoting Hollander v. Nichols, 19 So.3d 184, 197 (Ala.2009), quoting in turn other cases).
A. Simon’s Alleged Evident Partiality
In Waverlee Homes, Inc. v. McMichael, 855 So.2d 493 (Ala.2003), this Court considered for the first time a postjudgment attack on a final judgment entered upon an arbitration award based on the defendant’s postjudgment submission of evidence that the award was the result of bias on the part of the arbitrator. In Waverlee, the McMichaels sued Waverlee Homes, Inc., a manufacturer of mobile homes, alleging *525 fraud, breach of warranties, and negligence. The complaint sought both compensatory and punitive damages. The case was referred to arbitration, which resulted in a decision and award in favor of the McMichaels for $490,000. Following the entry of a final judgment by the trial court on the arbitration award, Waverlee moved to vacate the award pursuant to Rule 59(e), Ala. R. Civ. P. Waverlee asserted in its postjudgment motion to vacate the arbitration award and in the evidentia-ry submissions supporting that motion that the arbitrator’s alleged bias arose from a relationship between the arbitrator and the McMichaels’ counsel, that the arbitrator had engaged in activity raising the inference of bias in other cases, and that the arbitrator had failed to disclose the matters to Waverlee. The McMichaels did not present any evidence to contradict Waverlee’s claims of arbitrator bias. Wav-erlee’s postjudgment motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P.
In reversing the denial of Waverlee’s postjudgment motion by operation of law, this Court stated:
“In the instant case, Waverlee submitted post-arbitration, postjudgment evidence describing specific circumstances relating to its contention that Walker, the arbitrator, was biased. That evidence, when taken in its entirety, raises a threshold inference of possible bias based on Walker’s alleged failure to disclose any interest or bias that might affect his judgment, including any relationships between him and Utsey [the McMichaels’ attorney]. The McMicha-els did not submit any evidence to contradict Waverlee’s assertions of arbitrator bias, and there were therefore no material facts in dispute that would justify a finding by the trial court that Waverlee’s contentions were false. Thus, in light of [World Invest Corp. u] Breen, [684 So.2d 221 (Fla.Dist.Ct.App. 1996),] Medina [v. Foundation Reserve Ins. Co., Í28 N.M. 880, 940 P.2d 1175 (1997),] Melton [v. Lyon, 108 N.M. 420, 773 P.2d 732 (1989),], and [In re Arbitration Between ] Clawson [and Habilitat, Inc., 71 Haw. 76, 783 P.2d 1230 (1989),], we conclude that Waverlee’s evidentiary showing in support of its postjudgment motion was sufficient, at that initial stage, to warrant a hearing for the purpose of determining whether adequate evidence exists to grant Waverlee’s request to set aside the judgment of confirmation. Because it is the province of the trial court to assess the admissibility and weight of Waverlee’s evidence, and likewise that of any rebuttal evidence from the McMichaels, we do not comment on the merits of Waverlee’s allegations; rather, we conclude only that an evidentiary hearing is warranted.”
855 So.2d at 501.
In support of its postjudgment motion to vacate the arbitration award, Terminix presented the following evidence: that Simon revealed at the initial arbitration conference on November 23, 2010, that Termi-nix provided his pest-control service; that he revealed no other potential conflict of interests; that Terminix discovered on January 18, 2012, that Simon’s law firm had prosecuted a termite-damage case from 2003-2005 on behalf of a plaintiff against Terminix; and that knowledge by Terminix of Simon’s firm having previously sued Terminix in a termite-infestation case would have been a material consideration in determining whether to object to Simon’s appointment as arbitrator. Termi-nix supported these contentions with the affidavits of its counsel, who testified that counsel participated in and had personal *526 knowledge of all pre-arbitration and post-arbitration proceedings in this ease.[9]
Although the Scotts, like the plaintiffs in Waverlee Homes, have presented no evidence to the trial court to contradict Ter-minix’s assertions of Simon’s evident partiality based on a failure to disclose a potential conflict of interest, they do challenge Terminix’s argument as to the alleged evident partiality of Simon and the evidentiary submissions presented in support of that argument.
First, the Scotts argue that Terminix invited Simon to decide the facts relating to his alleged failure to disclose a potential conflict of interest by filing with Simon a motion to reconsider the arbitration award, which contained the accusations of Simon’s partiality. In disposing of the motion to reconsider the arbitration award, Simon expressly questioned whether he had jurisdiction “to reconsider an already decided matter.” Nevertheless, Simon considered the merits of Terminix’s motion to reconsider containing the allegations of bias and nondisclosure and found that the motion was without merit because he had “informed the parties of a closed matter in which his law firm represented a party adverse to Terminix several years ago ... and no objection was raised.” The Scotts contend that Simon’s finding on this issue is unequivocal and cannot now be challenged.
Simon was correct in questioning his jurisdiction to consider Terminix’s motion to reconsider. Rule 71B, Ala. R. Civ. P., provides no mechanism in which a party aggrieved by an arbitration award may seek review of that award by the arbitrator pursuant to a motion to reconsider or otherwise. In order to seek review of an arbitration award, a party must file a notice of appeal in the trial court within 30 days after service of notice of the arbitration award. Terminix perfected its appeal of the arbitration award when it filed its notice of appeal of the arbitration award in the trial court on February 21, 2012. Simon lost jurisdiction of the arbitration proceeding at that time, and his order purporting to deny Terminix’s motion to reconsider the arbitration award in which he expressly found that he had informed the parties of the alleged conflict is void. Therefore, Simon’s order purporting to deny Terminix’s motion to reconsider is a nullity and has no bearing on this appeal. SSC Selma Operating Co. v. Gordon, 56 So.3d 598, 601-02 (Ala.2010).
Second, the Scotts challenge the admissibility of the affidavits executed by counsel for Terminix and submitted in support of its postjudgment motion to vacate. However, this Court specifically stated in *527 Waverlee Homes that “[b]ecause it is the province of the trial court to assess the admissibility and weight of Waverlee’s evidence, and likewise that of any rebuttal evidence from the McMichaels, we do not comment on the merits of Waverlee’s allegations; rather, we conclude only that an evidentiary hearing is warranted.” 855 So.2d at 501.
Accordingly, we conclude that Ter-minix has presented evidence in support of its postjudgment motion to vacate the arbitration award that “raises a threshold inference of possible bias” necessary “to warrant a hearing for the purpose of determining whether adequate evidence exists to grant” Terminix’s motion to vacate the arbitration award. 855 So.2d at 501. Upon remand as to this issue, we note that the trial court should “review the offered evidence pursuant to the ‘reasonable impression of partiality’ standard,” as discussed in Waverlee Homes, 855 So.2d at 508, and, in assessing whether Simon was “biased or partial in his arbitration of the underlying dispute is to consider whether [Terminix] makes a showing through admissible evidence that the court finds to be credible, that gives rise to an impression of bias that is direct, definite, and capable of demonstration, as distinct from a ‘mere appearance’ of bias that is remote, uncertain, and speculative.” Waverlee Homes, 855 So.2d at 508.
B. Simon’s Alleged Failure to Adhere to the Limitations of Remedies and Damages
As stated in greater detail above, the termite-service contract at issue specifically limits Terminix’s liability under the contract to “provide retreatment found necessary by Terminix free of charge and to arrange and pay for the necessary repairs or replacement” caused by termite damage occurring after the effective date of the contract. The termite-service contract expressly disclaims liability on the part of Terminix “for direct, indirect, special, incidental, consequential, exemplary, punitive, and/or loss of enjoyment damages.” Termi-nix contends that the arbitration award is due to be vacated under 9 U.S.C. § 10(a)(4) of the FAA because, it says, Simon “exceeded [his] powers” pursuant to the contract by awarding the Scotts compensatory damages of $500,000 and punitive damages of $500,000.
Simon found in the arbitration decision and award that Terminix fraudulently induced the Scotts to enter into the termite-service contracts in 2001 and 2007 and that, as a result of the fraudulent inducement by Terminix, neither the “contracts nor the limitations of remedies and damages contained in these contracts [were] enforceable.” In Paragon Ltd., Inc. v. Boles, 987 So.2d 561, 567 (Ala.2007), this Court followed the Supreme Court’s holding in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), in which that Court reaffirmed its position that an arbitration provision is severable from the remainder of a contract and that “it is well established that challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court.” Here, the Scotts petitioned the trial court to appoint an arbitrator to arbitrate certain fraud claims arising from their dispute with Terminix. The arbitrator determined that the contract and the limitation-of-liability provision were unenforceable based on his finding that the Scotts had been fraudulently induced to enter into the termite-service contracts. Pursuant to Boles, supra, this finding was clearly within the scope of the arbitrator’s authority. A determination as to whether Simon’s finding of fraudulent inducement *528 is supported by the evidence is impossible given the lack of a record of the arbitration proceedings. Accordingly, based on the foregoing, Terminix has failed to demonstrate probable merit to its post-judgment motion to vacate the arbitration award based on its contention that Simon exceeded his authority by awarding damages expressly prohibited by the termite-service contract.
We agree with Terminix to the extent that it argues that the trial court erred in denying its postjudgment motion to vacate the arbitration award without first conducting a hearing on the motion as to the issue of arbitrator bias, and we further conclude that the denial of the post-judgment motion to vacate the arbitration award without first conducting a hearing was not harmless error. However, we find that the trial court did not err in denying the postjudgment motion to vacate the arbitration award without first conducting a hearing on the motion as to the issue whether the arbitrator had exceeded his authority under the termite-service contract.

Case No. 1111360

Terminix appeals from the trial court’s order referring the Scotts’ ALAA motion for sanctions to arbitration. Section 12-19-272(a), Ala.Code 1975, provides:
“(a) Except as otherwise provided in this article, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys’ fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part....”
The ALAA does not “create a new or separate cause of action that can be brought after a case is litigated and given a final adjudication on the merits.” Casey v. McConnell, 975 So.2d 384 (Ala.Civ.App. 2007). The trial court does not have jurisdiction to rule upon an ALAA claim after it has entered a final judgment on the underlying claim unless it has specifically reserved jurisdiction to hear the ALAA claim. Id. “[A] party may timely file a postjudgment motion directed to the judgment on the merits seeking the reservation of jurisdiction to hear the ALAA claim; if that motion is granted and the trial court reserves jurisdiction over the ALAA claim pursuant to the amended judgment, the claim survives.” Klinger v. Ros, 33 So.3d 1258,1261 (Ala.Civ.App.2009).
In this case, the trial court entered its final judgment as to the arbitration award on April 26, 2012. The trial court did not reserve jurisdiction in its final judgment to rule upon any subsequent ALAA claim. Additionally, the Scotts did not file a timely postjudgment motion seeking the reservation of jurisdiction by the trial court to hear the ALAA claim. Accordingly, we conclude that the trial court was without jurisdiction to adjudicate in any respect the Scotts’ ALAA claim because that claim did not survive the trial court’s failure to reserve jurisdiction to hear the claim. Because the trial court lacked jurisdiction to rule upon the ALAA claim, the trial court’s order referring the ALAA claim to arbitration is void, and a void judgment will not support an appeal. Klinger, supra. Accordingly, we dismiss Terminix’s appeal in case no. 1111360, with instructions to the trial court to vacate its void judgment. See Landry v. Landry, 91 So.3d 88 (Ala.Civ.App.2012).
1111232 — REVERSED AND REMANDED WITH INSTRUCTIONS.
1111360 — APPEAL DISMISSED.
*529 STUART, PARKER, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and SHAW, J., concur in the result.

. This consent decree resulted from an investigation and lawsuit by the State of Minnesota alleging that NAF had affiliated with various corporations that issued adhesion contracts forcing consumers to participation in biased NAF proceedings.

. The Scotts had previously paid Simon $5,000 toward satisfaction of their share of the arbitration fee.

. It appears that Terminix had some concern regarding the release of the arbitration decision and the timing of its fee payment.

. The record indicates that a second notice of filing of the arbitrator’s decision and award was filed on February 2, 2012.

. A dispute exists between the parties as to what motions were argued to and considered by the trial court during the emergency hearing on May 31, 2012. Terminix contends that the sole matter argued at the emergency hearing was its motion to stay execution of the arbitration judgment. The Scotts contend that they requested that Terminix’s post-judgment motion to vacate the arbitration judgment also be heard and that the trial court heard arguments on that motion as well.

. The Scotts state in this motion that they had filed contemporaneously with it a claim pursuant to the ALAA and claims alleging malicious prosecution and abuse of process. Indeed, the Scotts did file a motion seeking relief pursuant to the ALAA; however, the record does not indicate that claims of malicious prosecution and abuse of process were ever actually asserted against Terminix.

. On July 16, 2012, the Scotts moved this Court to dismiss Terminix's appeal in case no. 1111232 arguing, among other things, that it was procedurally defective. First, the Scotts argued that a timely appeal was not taken from the $10,000 award issued by Simon and, therefore, that this Court was without jurisdiction to consider that award. Second, Ter-minix stated in its docketing statement — filed with its notice of appeal in this Court on June 8, .2012 — that it was appealing from an award of "1,030,000.” The Scotts contended that an award of "1,030,000” was nonexistent because the final judgment in this case was entered on an award by Simon of $1,020,000. The Scotts argued that because Terminix failed to appeal from the judgment entered on the award of $1,020,000, this Court was without jurisdiction to consider that judgment, and the appeal was due to be dismissed. However, the Scotts have subsequently conceded in their appellate brief filed in this Court on April 8, 2013, that Terminix’s notice of appeal as to the arbitration judgment was sufficient. The Scotts still challenge this Court's jurisdiction as to the $10,000 judgment.

. It does not appear that Terminix disputes that the Scotts advanced Terminix's $10,000 share of the arbitration fee to Simon, nor has Terminix mounted a serious challenge to the *521 Scotts' position that they are entitled to be reimbursed for their payment of Terminix's share of the arbitration fee.

. Terminix states in its brief that on May 29, 2012, it inquired of Simon as to whether he ran a conflict search at the time of his appointment and that if he had would he be willing to provide the result of the conflict search to the parties. Counsel for the Scotts notified Simon on June 1, 2012, that they had no objection to his providing the conflict check with the parties if one existed. On June 1, 2012, Simon responded to the inquiry as to the conflict search stating that such communication was inappropriate for various reasons. Terminix has appended to its brief documents evidencing the above communications and acknowledges that the documents are not part of the record on appeal. However, Terminix states that the trial court would be able to consider such additional evidence upon remand as evidence of arbitrator partiality in determining whether to vacate the arbitration award. See Waverlee Homes, 855 So.2d at 503 (stating that "the trial court must also consider the evidence we set out supra, along with any additional evidence elicited in the evidentiary proceedings on the postjudgment motion, when making its determination as to whether Waverlee has presented sufficient evidence of arbitrator bias to warrant vacation of the judgment of confirmation of the arbitrator's award”).