Rel: April 12, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0394
_____

**S&M Associates, Inc., and Doyle Sadler**

**v.**

**Players Recreation Group, LLC**

**Appeal from Jefferson Circuit Court**
**(CV-15-902552)**

WISE, Justice.

S&M Associates, Inc. ("S&M"), and Doyle Sadler, the plaintiffs below, appeal from an order of the Jefferson Circuit Court, which was entered on remand from this Court.

<u>Background</u>

Some of these parties have been before this Court before in <u>Sadler v. Players Recreation Group, LLC</u>, 374 So. 3d 683 (Ala. 2022). This Court previously set forth the relevant factual and procedural history as follows:

> "This case involves a dispute among Players Recreation Group, LLC, an Alabama limited-liability company ('the LLC'); three of its members, Jason L. McCarty ('Jason'), Felix McCarty ('Felix'), and Doyle Sadler; and S&M Associates, Inc. ('S&M'), a company owned by Sadler. On appeal, Sadler asserts that the trial court erred insofar as it entered a judgment against him on the counterclaims asserted against him by the LLC, Jason, and Felix.[1]…
>
> "….
>
> "The LLC, which was established in 1999, presently owns and operates a bowling alley known as 'the Super Bowl.' In 2002, the LLC's certificate of formation was amended to reflect the membership interests in the LLC at that time, which were as follows: Jason (40%), Felix and Judy McCarty ('Judy') (25%), Sadler (25%), and Scott Montgomery (10%).[2] The LLC has no written limited-liability-company agreement ('LLC agreement'), formerly known as an operating agreement. In 2003, S&M, a company owned by Sadler, loaned the LLC $150,000, which is evidenced by a promissory note; there is no dispute that the note is valid, binding, and enforceable. In 2006, the Super Bowl began incurring substantial losses, and the LLC ultimately defaulted on the promissory note payable to S&M. In July 2015, S&M and Sadler, in his capacity as a member of the LLC and as a designated agent for S&M, sued the LLC and the other members of the LLC, asserting a breach-of-contract claim and

a claim seeking an accounting.[3] In August 2015, the LLC, Jason, and Felix filed an answer and a counterclaim, alleging that Sadler had breached his duty of loyalty and his duty of care to the LLC.

"The case proceeded to a bench trial. The parties initially stipulated that the LLC owed S&M a total of $310,139.66 on the promissory note; the trial court ultimately entered a judgment against the LLC for that amount based on the parties' stipulation. The case was then tried solely on the counterclaims asserted against Sadler by the LLC, Jason, and Felix ('the counterclaimants'), which alleged that Sadler had breached his duty of loyalty and his duty of care to the LLC because, the counterclaimants asserted, when the Super Bowl began incurring substantial debt, Sadler had refused to work there on a full-time basis and had also failed to make a contribution to the LLC for his share of that debt. During the trial, the counterclaimants also asserted for the first time that Sadler had breached the implied covenant of good faith and fair dealing.

"As previously indicated, the LLC did not have a written LLC agreement. According to Jason, the members had orally agreed upon the LLC's fundamental operating terms. Specifically, Jason testified that all the members of the LLC were self-employed but that they had each agreed to perform work for the Super Bowl: Jason, who was a certified public accountant, agreed to be the general manager of the Super Bowl and to handle the LLC's taxes and other financial matters; Felix, who owned a window shop, agreed to be in charge of handling mechanical and maintenance issues arising at the Super Bowl; Sadler, who was an electrical contractor, also agreed to be in charge of handling mechanical and maintenance issues arising at the Super Bowl; Montgomery, who was a meter reader, agreed to help in the kitchen and to be in charge of the vending machines; and Judy, who was a licensed real-estate agent, agreed to be the bar manager and office assistant. Jason, Felix, and Judy were

3

the only members who had ever received salaries from the LLC. As for Sadler, Jason conceded that Sadler's job as an electrical contractor required him to travel out of town. However, Jason stated that Sadler had agreed that, when he was in town, he would perform work for the Super Bowl. Sadler did, in fact, perform work for the Super Bowl, presumably until he commenced this case. According to Jason, beginning in 2006 and continuing thereafter, the Super Bowl incurred significant losses because of, among other things, new competition in the area, the economic recession of 2008, and the closing of other businesses adjacent to the Super Bowl. Jason stated that, at some point in either 2007 or 2008, Sadler's electrical-contracting business experienced 'a slowdown' and that he had 'petitioned' Sadler to work at the Super Bowl on a 'regular' basis. Jason stated that Sadler had repeatedly told him that he could not afford to work at the Super Bowl on a regular basis because he was looking for 'odd jobs' in the area. Jason testified that, in 2010, the LLC stopped making payments to S&M under the promissory note so that the LLC could continue to pay its debt secured by a mortgage on the Super Bowl. Jason also testified that, from 2006 until 2020, the LLC had incurred $2,713,230.33 in debt; he claimed that the debt was based on unpaid compensation, loans, reimbursements, expenses, and purchases that were allegedly owed by the LLC to Jason, Felix, and Judy. The obligation to S&M under the promissory note was not included in the $2,713,230.33 debt amount. Finally, Jason stated that he had orally requested that Sadler contribute to the LLC's debt. However, there was no evidence indicating that Sadler had agreed to make any contribution to the LLC for its debt.

"At the close of the counterclaimants' evidence, Sadler filed a motion for a judgment on partial findings, which the trial court denied. See Rule 52(c), Ala. R. Civ. P. After the trial resumed, Sadler testified regarding his understanding of the agreement among the members of the LLC. Sadler stated that, to 'save money,' all the members had decided 'to pitch in'

4

and perform work at the Super Bowl relative to his or her trade. Sadler testified at length regarding the work, including electrical work, that he had performed at the Super Bowl without compensation. Sadler further explained that, in 2010, his electrical-contracting business had 'slacked' and that he had approached Jason about working at the Super Bowl on a regular basis. He testified that he had told Jason that he did not want to get paid but, rather, that he wanted to work solely for health-insurance benefits. According to Sadler, Jason said that he would get back with him but never did.

"After hearing all the evidence, the trial court entered a judgment against the LLC in the amount of $310,139.66, based on the parties' stipulation that the LLC owed that amount on the promissory note payable to S&M. The trial court then entered a judgment against Sadler on the counterclaims, based on its findings that Sadler had breached not only a duty of loyalty and a duty of care to the LLC, but also the implied covenant of good faith and fair dealing owed to the LLC. The trial court assessed damages against Sadler in the amount of $368,167.92. Specifically, the trial court concluded that the LLC had incurred $2,713,230.33 in debt related to the management and operation of the Super Bowl and that Sadler's 25% share of that debt was $678,307.58. As a set off, the trial court deducted the amount that the LLC owed on the promissory note to S&M from the amount Sadler allegedly owed the LLC for its debt, leaving a balance of $368,167.92 to be paid by Sadler. The trial court indicated that Sadler could satisfy the judgment against him by tendering his membership interest in the LLC and by holding the LLC harmless for any additional sums owed to S&M on the promissory note. This appeal followed.

"_____

"[1]Although both S&M and Sadler were listed on the notice of appeal, the issues raised on appeal involve only the

5

propriety of the trial court's judgment regarding the counterclaims asserted against Sadler. We have therefore amended the style of the appeal accordingly.

"²Neither Montgomery nor Judy are parties to this appeal. According to the parties, Montgomery 'abandoned' the LLC in 2006 and Judy died in 2019.

"³The claim for an accounting was ultimately dismissed. The breach-of-contract claim was asserted against the LLC and Jason, in his alleged capacity as the managing member of the LLC; ultimately, that claim was dismissed as to Jason."

Sadler, 374 So. 3d at 684-86.

On appeal to this Court, Sadler argued that "the trial court erred insofar as it entered a judgment against him on the counterclaims asserted against him by the LLC, Jason, and Felix." Sadler, 374 So. 3d at 684. This Court agreed and concluded as follows:

"[T]he trial court's judgment, insofar as it held that Sadler had breached the duty of loyalty and the duty of care to the LLC by refusing to work at the Super Bowl on a full-time basis and by failing to contribute $678,307.58 to the LLC's debt, is not supported by the evidence and is, therefore, due to be reversed. ...

"....

"... [T]he trial court's judgment, insofar as it held that Sadler had breached the implied covenant of good faith and fair dealing, is unsupported by the evidence and is, therefore, due to be reversed.

"....

6

"We reverse the judgment entered against Sadler on the counterclaims asserted against him because there was no evidence to support findings that Sadler had breached the duty of loyalty and the duty of care owed to the LLC or the implied covenant of good faith and fair dealing, and we remand the case to the trial court for the entry of a judgment consistent with this opinion."

Sadler, 374 So. 3d at 689-90.

## On Remand to the Trial Court

On remand, on October 24, 2022, S&M and Sadler filed a motion for attorney's fees, costs, and expenses. In that motion, S&M asserted that, pursuant to the promissory note, it was entitled to the attorney's fees and costs it had incurred on appeal. Additionally, Sadler asserted that, pursuant to the Alabama Litigation Accountability Act ("the ALAA"), § 12-19-270 et seq., Ala. Code 1975, he was entitled to attorney's fees and costs relating to the trial on the counterclaims.

On December 13, 2022, Players Recreation Group, LLC ("the LLC"), filed a motion for relief on remand and an opposition to the requests for attorney's fees. In that motion, the LLC requested that the trial court disassociate and expel Sadler and Scott Montgomery from the LLC. It also stated: "There also remains to be determined what priority the claims of other … members [of the LLC] have over Mr. Sadler's claim.

7

The other members' contribution of their services was a direct substitute for the payment [on a mortgage debt owed] to Mr. [Ferris] Ritchey." With regard to the request for attorney's fees by Sadler, the LLC argued:

"11. The trial court does not have jurisdiction to rule upon [an ALAA] claim after it has entered a final judgment on the underlying claim, unless it has specifically reserved jurisdiction to hear the [ALAA] claim. Terminix Int'l Co. v. Scott, 142 So. 3d 512 (Ala. 2013).

"12. Simply because the Alabama Supreme Court reversed this Court (even under the ore tenus standard) does not make [the LLC's] counterclaims '...frivolous, groundless in fact or law, or vexatious ...' as stated in Alabama Code § 12-19-271. It is the trial court's duty to make that finding, and such was not the case because of this Court's order of July 9, 2021 …

"13. The [ALAA] is a defense that should have been pleaded when this matter was originally before this Court. It has no place to now be claimed because an appellate court has substituted its judgment of the facts for the judgment of this trial Court."

On December 14, 2022, S&M and Sadler filed a response to the LLC's motion and opposition.

On April 19, 2023, the trial court entered its order on remand. In its order, the trial court found as follows:

"The judgment in the amount of $368,167.92 entered against Doyle Sadler ('Mr. Sadler') and in favor of [the LLC] is set aside as directed by [Sadler v. Players Recreation Group, LLC, 374 So. 3d 683 (Ala. 2022)].

8

"At trial, the parties stipulated that the unpaid principal and accrued interest on the promissory note owed by [the LLC] to S&M … is $258,028.50 as of March 2, 2020. The parties further stipulated that $27,284.00 in attorney's fees and $11,325.00 of accounting fees have been spent by S&M … in its efforts to collect on the note. As of the date of said stipulations, March 2, 2020 to the continuation and completion of the trial of this action on May 19, 2021, an additional amount of interest has accrued, pursuant to the promissory note, and stipulated to by the parties in the amount of $13,502.16. Accordingly, the total amount of stipulated damages as to Count two, breach of contract, of the Plaintiffs' complaint is $310,139.66 owed by [the LLC] to S&M ….

"[The] motions for attorney's fees, costs, and expenses are denied for the reasons set forth below.

"<u>Denial of … Motions for Attorney's Fees Either Pursuant to Contract or the Alabama Litigation Accountability Act</u>

"As set forth … above, the stipulated damages for breach of contract by [the LLC] is $310,139.66. That stipulation by the parties included an award of attorney's fees for the breach of contract. No additional amount is due.

"This Court does not have jurisdiction to rule upon [an ALAA] claim after it has entered a final judgment on the underlying claim, unless it has specifically reserved jurisdiction to hear the [ALAA] claim. <u>Terminix Int'l Co. v. Scott</u>, 142 So. 3d 512 (Ala. 2013).

"This Court finds that [the LLC's] counterclaim[s] did not lack substantial justification, or that the action or any part thereof was interposed for delay or harassment, or that an attorney or party unnecessarily expanded the proceedings by other improper conduct, including but not limited to,

9

abuses of discovery procedures or availability under the state's rules of civil procedure.

"Simply because the Alabama Supreme Court reversed this Court does not make [the LLC's] counterclaims '... frivolous, groundless in fact or law, or vexatious ...' as stated in Alabama Code § 12-19-271. It is this Court's duty to make that finding, and such is not the case.

"Priority of Debt Owed by [the LLC] to
Jason L. McCarty and Felix McCarty

"In its order of July 9, 2021, this Court found that [the LLC had] incurred $2,713,230.33 in expenses without contribution by Mr. Sadler or Scott Montgomery. That finding was not disturbed on appeal and has become the law of the case. The Court takes judicial notice that Jason and Felix McCarty have perfected, as the remaining members of [the LLC], that claim or debt by filing a second mortgage with the Probate Court of Jefferson County (Instrument No. 2022115615, filed November 10, 2022) which second mortgage is inferior to the mortgage held by the late Ferris Ritchey's real estate company, and the perfection of this claim makes it a priority over and superior to the claims of other creditors, including S&M .... See, Foster v. Porterbridge Loan Company, Inc., 27 So. 3d 481 (Ala. 2009)."

Discussion

I.

S&M argues that the trial court erred in denying its request for attorney's fees and costs on appeal. In its order on remand, the trial court rejected S&M's claim, reasoning as follows:

10

"At trial, the parties stipulated that the unpaid principal and accrued interest on the promissory note owed by [the LLC] to S&M … is $258,028.50 as of March 2, 2020. The parties further stipulated that $27,284.00 in attorney's fees and $11,325.00 of accounting fees have been spent by S&M … in its efforts to collect on the note. As of the date of said stipulations, March 2, 2020, to the continuation and completion of the trial of this action on May 19, 2021, an additional amount of interest has accrued, pursuant to the promissory note, and stipulated to by the parties in the amount of $13,502.16. Accordingly, the total amount of stipulated damages as to Count two, breach of contract, of the Plaintiffs' complaint is $310,139.66 owed by [the LLC] to S&M ….

"….

"As set forth … above, the stipulated damages for breach of contract by [the LLC] is $310,139.66. That stipulation by the parties included an award of attorney's fees for the breach of contract. No additional amount is due."

The record before us supports the trial court's findings. Also, although S&M sought attorney's fees and costs on appeal, when the matter was previously before us, we noted: "Although both S&M and Sadler were listed on the notice of appeal, the issues raised on appeal involve only the propriety of the trial court's judgment regarding the counterclaims asserted against Sadler." Sadler, 374 So. 3d at 684 n.1. It does not appear that S&M actually pursued claims in that first appeal.

11

For these reasons, the trial court did not err in denying S&M's request for attorney's fees and costs on appeal.

## II.

Sadler also argues that the trial court erred in denying his request for fees and costs pursuant to the ALAA. In its order on remand, the trial court rejected Sadler's claim, reasoning as follows:

> "This Court does not have jurisdiction to rule upon a [an ALAA] claim after it has entered a final judgment on the underlying claim, unless it has specifically reserved jurisdiction to hear the [ALAA] claim. Terminix Int'l Co. v. Scott, 142 So. 3d 512 (Ala. 2013).
>
> "This Court finds that [the LLC's] counterclaim[s] did not lack substantial justification, or that the action or any part thereof was interposed for delay or harassment, or that an attorney or party unnecessarily expanded the proceedings by other improper conduct, including but not limited to, abuses of discovery procedures or availability under the state's rules of civil procedure.
>
> "Simply because the Alabama Supreme Court reversed this Court does not make [the LLC's] counterclaims '... frivolous, groundless in fact or law, or vexatious ...' as stated in Alabama Code § 12-19-271. It is this Court's duty to make that finding, and such is not the case."

The record supports the trial court's findings. Sadler argues that, in his answer to the LLC's counterclaim, he "affirmatively pled the Alabama Litigation Accountability Act for the frivolous nature of the

allegations made by the counterclaim." S&M and Sadler's brief at p. 30. However, in its original judgment entered on July 9, 2021, the trial court did not expressly rule on Sadler's ALAA claim. "Alabama courts have held that a trial court's entry of a judgment without specifically reserving jurisdiction over an ALAA claim constitutes an implied denial of that claim. See McGough v. G&A, Inc., 999 So. 2d 898, 903 (Ala. Civ. App. 2007)." Edwards v. Ford, 93 So. 3d 99, 103 (Ala. Civ. App. 2011). The record before us does not indicate that the trial court reserved jurisdiction to hear and rule on an ALAA issue before it entered its judgment on July 9, 2021. Thus, that judgment constituted an implied denial of Sadler's ALAA claim. Sadler did not challenge the trial court's implied denial of his ALAA claim on appeal in Sadler. Also, in our decision in Sadler, this Court did not reverse the trial court's implied denial of Sadler's ALAA claim or include instructions for the trial court to consider that claim on remand. Therefore, Sadler's attempt to pursue the issue on remand from this Court came too late, and the trial court did not err in denying Sadler's motion.

III.

13

Finally, S&M and Sadler take issue with the portion of the order on remand that is entitled "Priority of Debt Owed by [the LLC] to Jason L. McCarty and Felix McCarty."

## A.

First, S&M and Sadler argue that "[t]he trial court's 'finding' that [the LLC] incurred $2,713,230.33 was reversed by the order of this Court." S&M and Sadler's brief at p. 37. However, as the trial court correctly noted on remand, in our opinion in Sadler, we expressly stated that the only portion of the trial court's judgment that was being reversed was the judgment entered against Sadler on the counterclaims asserted against him. Therefore, the trial court's original finding that the LLC had incurred $2,713,230.33 in expenses remained valid.

## B.

Next, S&M and Sadler argue that the trial court erred in taking judicial notice of a mortgage executed by the LLC in favor of Jason McCarty and Felix McCarty and that it did not have jurisdiction to hold that Jason and Felix had recorded the mortgage the LLC had executed in their favor (and thereby perfected their lien) and to enter an order

stating that that mortgage would take priority over the claims of S&M. We agree.

> "'It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered .... The appellate court's decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence ....'

"5 Am. Jur. 2d, Appeal and Error § 991 (1962)."

Ex parte Alabama Power Co., 431 So. 2d 151, 155 (Ala. 1983).

In Sadler, we reversed the judgment the trial court had entered against Sadler on the counterclaims that had been asserted against him. In this Court's remand instructions, we did not authorize the trial court to do anything other than enter a judgment consistent with that opinion. This Court did not address any issue regarding the mortgage executed by the LLC in favor of Jason and Felix. In fact, that mortgage was not recorded until after this Court had released its decision in Sadler. Therefore, when it took judicial notice of the mortgage executed by the LLC in favor of Jason and Felix and when it purported to determine the

15

priority of that mortgage, the trial court exceeded the scope of our remand instructions.

> "'It is well settled that "any act by a trial court beyond the scope of an appellate court's remand order is void for lack of jurisdiction." Anderson v. State, 796 So. 2d 1151, 1156 (Ala. Crim. App. 2000)(opinion after remand), citing Ellis v. State, 705 So. 2d 843, 847 (Ala. Crim. App. 1996)(stating that on remand, "the trial court had no jurisdiction to modify the original or base sentence imposed or to take any action beyond the express mandate of this court").'

> "Smith v. State, 852 So. 2d 185, 189-90 (Ala. Crim. App. 2001)."

Jackson v. State, 177 So. 3d 911, 939 (Ala. Crim. App. 2014). Accordingly, the portion of the trial court's order on remand that addresses the LLC's mortgage executed in favor of Jason and Felix and its purported priority is void for lack of jurisdiction.

## Conclusion

For the above-stated reasons, we affirm the trial court's order on remand insofar as it denied S&M's and Sadler's requests for attorney's fees and costs, reverse the order insofar as it addressed the LLC's mortgage executed in favor of Jason and Felix and its purported priority, and remand this case with instructions for the trial court to set aside that

16

portion of its order that addressed the LLC's mortgage and its purported priority.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Parker, C.J., and Stewart and Cook, JJ., concur.

Sellers, J., concurs specially, with opinion.

SELLERS, Justice (concurring specially).

As the author of <u>Sadler v. Players Recreation Group, LLC</u>, 374 So. 3d 683 (Ala. 2022) ("<u>Sadler</u>"), I concur with the main opinion that the trial court had no jurisdiction to take any action beyond (1) vacating the judgment entered against Doyle Sadler on the counterclaims asserted against him by Players Recreation Group, LLC ("the LLC"), and its members, Jason McCarty and Felix McCarty, alleging that Sadler had breached the duty of loyalty and duty of care owed to the LLC or the implied covenant of good faith and fair dealing and (2) entering a judgment in favor of Sadler on those counterclaims. On remand, the trial court vacated the original judgment and entered a judgment in Sadler's favor as directed. However, in addition, the trial court improperly took judicial notice of a mortgage that had been executed by the LLC in favor of Jason and Felix and purported to determine the priority of that mortgage. That action essentially reinstated the trial court's initial determination and neglected the logical conclusion of our decision as if Sadler had not appealed. Although the main opinion correctly points out that the mortgage was not an issue on appeal and, in fact, was not recorded until after this Court had released its decision in <u>Sadler</u>, I write

18

specially to add that, according to Sadler, the trial court was never asked to take judicial notice of the mortgage; neither the mortgage nor its contents were introduced at the hearing on remand; and Sadler had no knowledge of the mortgage until after the trial court had referenced it in its order on remand and, thus, had no opportunity to dispute its validity. I am troubled by the trial court's actions in both acknowledging the existence of the mortgage and determining its priority over the judgment this Court required the trial court to enter. While an unrecorded mortgage may have priority over a judgment lien, in this situation, in which the purported creditors were members of the LLC and, unlike Sadler, had full knowledge of the mortgage's existence, the creditors could not, after the judgment had been entered, record a mortgage to claim priority over the judgment. Rather, the creditors and members of the LLC, with knowledge that the mortgage existed, were required to plead the existence of the mortgage so that the case could be fully resolved, i.e., so that all monetary disputes between the parties could be properly reviewed, resolved, and finally concluded. In this case, the recording of the mortgage after the issuance of this Court's decision in Sadler in an attempt to gain priority over other creditors renders the

mortgage subject and subservient to the judgment entered in favor of Sadler.